BENTON vs. HORSLEY.

1. There is no variance between the description of the property sued for as set forth in the declaration and in the deed appended as a portion of the abstract of title. No exception was taken at the trial on account of such variance, and no such question was passed upon by the court.

2. There being evidence as to the relative situation of a fence, which ran near the bank of a creek, and the line of high water on that side, a charge that the jury would "find the line on the west side of the creek along with the fence of W. H. Preston up to the line of Davidson at high-water mark," etc., was not error.   "Along" a line does not necessarily signify that an object must be on the line; but the location of the line was left to the jury.

3. When land is conveyed by metes and bounds, whether there be more or less than the quantity named in the deed, the purchaser obtains the whole of it.   It was not error to charge this principle, and the whole charge not being sent up, will be presumed correct; nor does it appear that the charge given misled the jury.

4. The verdict is supported by the evidence.

December 21, 1883.

Title.   Ejectment.   Charge of Court.   Pleadings.   Evidence.   Variance.   Water Courses.   Deeds.   Title.   Presumptions.   Before Judge LAWSON.   Jasper Superior Court. April Term, 1883.

W. G. Horsley brought complaint for land against James Benton.    The land was described in the declaration as follows :

· '' Commencing on the west side of said creek, and northwest of the public bridge over said creek, on the road leading from Wm. H. Preston to Madison, and about or near one hundred yards from the west end of said bridge, at the southeast corner of Wm. H. Preston's creek-field fence, at high-water mark, and said line running with said Wm. H. Preston's land line up said creek in a northwesterly direction, at high-water mark on the west bank of said creek, till it reaches the line of John Davidson, then across said creek with said David son's line, in an easterly direction, to high-water mark on the east side of said creek, then down said creek at high-water mark on the highest line reached by high waters on the east side of said creek, till it reaches an oak tree on the abrupt jutting of the hill and termination of the creek bottom, on the east side, a few yards away and just above and up the creek from said public bridge, thence across the creek in a westerly direction to the starting point at the corner of Wm. H. Preston, where defendant has built and joined a fence to Wm. H. Preston's fence, making, by estimation, about fifty acres, more or less.''

By amendment, plaintiff added, as part of his abstract of title, a deed from Pou to plaintiff and Newton, described below. .

On the trial, plaintiff introduced the deed from L. W. Pou to plaintiff and L. B. Newton, dated January 15, 1869, which contained the following description of the land : Seven hundred and seventy acres, more or less, known as the Holland place, and

"Also thirty acres of land, more or less, off of what is known as the mill tract, including the mill-seat, beginning at an old white-oak stump at the Holland bridge, on the road running from the old mill-seat to Wm. H. Preston's, and running along Wm. H. Preston's line to high-water mark on the west bank; thence up said creek on the west bank, at high-water mark, to John Davidson's line; thence with Davidson's line across said creek to the high-water mark on the east bank; thence down the east bank, at high-water mark of said creek, to a rock corner to be put up about one hundred yards, more or less, above the old bridge, thence nearly east to a red elm tree on the west side of the Madison road,'' etc.

Plaintiff also introduced a deed of settlement between himself and Newton, in which the latter conveyed to him

his interest in the Pou lands, as above described. It was dated Feb. 18, 1875.

This controversy was over what land was covered by the following words in the description : "thence with Davidson's line across said creek to high-water mark to the east bank, thence down the east bank at high-water mark of said creek, to a rock corner to be put up about one hundred yards, more or less, above the old bridge." Plaintiff contended that under these words, the line ran off from the creek channel proper, described a curve, including the land in dispute, and came back to the channel of the creek at the rock corner. Defendant claimed that the above stated words meant for the line to run along the bank of the creek at a point where, under ordinary circumstances, the high-water of the creek reached, and not including this tract of land, but only the strip along the bank of the creek. Defendant claimed under a deed from L. W. Pou to W. C. Leverett, from Leverett to John Benton, and from the lat-ter to defendant. These deeds conveyed to defendant all of the land which was east of the line fixed by the deed from Pou to Horsley and Newton, and were junior to it.

The following parol evidence was introduced on behalf of plaintiff :

*John Davidson* testified : Has known land about sixty years. Has known it since Holland owned it ; is acquainted with the lines. The "mill tract" does not join witness's land, but the premises in dispute do. Does not know where high-water marks are ; can't tell. The banks of the creek are higher near the creek than further off in the flat. Has seen the water overflow the bank and cover parts of the land claimed. Banks of creek are abrupt and high ; higher on east than on west side. Cultivated yearly on the west, within fifteen or twenty steps of the creek. Has known Pou to cultivate bottom in dispute. There is a low place in bottom some distance from creek. Has know water to back up in it when mill was running. Pou cut ditches there. Mill has not been there for about thirty years. Hors-

ley started to build a dam near where the road bridge is, and cut or partly cut a race. Can't say whether mill-dam would back water over bottom or not. Don't think it would. Might back water on a part of it. In his opinion, a mill would be useless without control of the bottom.

*Plaintiff* testified: Bought land in controversy from Pou, together with Newton, about 1868, as shown in Pou's deed. Went into possession, and held jointly with Newton until 1875 then bought out Newton; then held exclusive possession until defendant or his brother put a fence on the bottom. Supposed at first they did not claim title, but merely wanted pasturage. Did not know of any claim of title until the fall of 1881. The principal reason for purchasing any land from Pou was for mill purposes; and plaintiff would not have bought without this land. Asked Pou how much land lay above for purposes of a pond. He said he did not know; that it was unnecessary to name the number of acres; that "more or less" and "high water mark" and bounds would convey it, and that he was throwing it in, as he didn't need it for pasturage. Witness asked him how far high-water mark extended. Pou replied, "Away up the hill-side, as far as witness wanted to go to back water from the dam." Exercised the same acts of ownership over bottom as over the other unenclosed land. In 1876 or 1877 spoke of fencing it in presence of Preston. The latter was excited, and said his cattle would have no pasturage, if this were done. He did not dispute title, and plaintiff let it lie open as a matter of favor. Started to build a dam, race and other improvements, in 1880, and expended about $800.00, but a freshet injured the work, and Newton having no funds, and plaintiff having already advanced heavily, the project was dropped, "else the waters would have been utilized, and the land in dispute covered by the mill-pond." Witness detailed some conversation with W. J. M. Preston, in which he (plaintiff) asserted his right to the property, and Preston did not deny it. Did not know of Preston's claiming the Pou place; he was not in possession.

*Wm. Barr*: Does not know where nigh-water mark is. When creek was up last spring, went and stuck up stobs after the water had fallen about three inches. That was about one hundred yards from east bank of said stream. Water did not cover the whole bottom, but most of bottom was covered. Some of the land near the creek was higher, and not covered. Bottom is valuable for pasturage. Defendant has built two fences running entirely across the creek, and joining the Preston fence on the west side.

Defendant introduced the following parol evidence:

*W. C. Leverett* testified: Has known land fifty years. Was shown to him by Holland when mill was there. Fine sugar-cane was then growing on it, while the mill was running. There is a low flat place at the east side of the bottom. The dam which Horsley started to construct, might back water some distance up that; not all over bottom. The side of land next to creek is higher. Don't know where high-water mark is. All the land embraced in the plat would make about sixty acres.

*W. J. M. Preston* testified: Bought land in controversy from L. W. Pou; paid $1,000.00 cash; did not take deed to himself; deed was made to W. C. Leverett; lived with Pou on place in 1868; had bottom cultivated; had fence along line of bank of creek; knows he always claimed it; witness exercised acts of ownership over bottom and claimed it, and Horsley knew it, and never intimated that he claimed it. Denies conversations detailed by Horsley; land on east bank is higher than that on west; land on west has been long cultivated. The fence is within 10 or 20 steps of the creek. Does not think mill-pond would overflow land in dispute. Witness pastured stock on the land, and exercised the same control as over his other land, but did not fence it in, and allowed the stock of others to run on it. Entire amount embraced in diagram is sixty-five to seventy acres.

*O. M. Benton* testified  Has been in possession of land in dispute. Witness obtained it from his father, who obtained it from Leverett. Witness has sold to his brother,

the defendant, but has not yet made a deed.   Never heard
of any adverse claim until just before Horsley went to
Texas.   Witness got Horsley, brought him to the place
and asked him to show the lines; he could not do it; he
did not claim the land in dispute; did not show any
high-water marks; said he did not know them.

The jury found for the plaintiff the premises in dispute.
Defendant moved for a new trial on the grounds set out
in the decision.  ⌐hich was refused, and defendant ex-
cepted.

KEY & PRESTON; J. H. LUMPKIN, for plaintiff in error.

G. T. & C. L. BARTLETT for defendant.

HALL, Justice.

This was an action in the statutory form to recover
thirty acres of land, more or less, situated on Murder Creek,
in Jasper county, and was a part of a much larger tract that
was owned by Lewis F. Pou, who, on the 15th day of Jan-
uary, 1879, conveyed the premises in dispute to Lucien B.
Newton and William G. Horsley.   Newton subsequently
conveyed to Horsley, the plaintiff in this suit.   The boun-
daries of the land are set forth in the deed from Pou to
Newton and Horsley as follows:

"Thirty acres of land, more or less, off of what is known as the mill
tract, including the mill-seat, beginning at an old white-oak stump at
the Holland Bridge, on the road running from the old mill-seat to
William H. Preston's, and running along William H. Preston's line
to high-water mark on the west bank, thence up said creek on the
west bank, at high-water mark, to John Davidson's line, then with
Davidson's line across said creek to high-water mark on the east
bank, thence down the east bank at high-water mark of said creek to
a rock corner to be put up about one hundred yards, more or less,
above the old bridge."

The deed containing this description was set out as a
portion of the plaintiff's abstract of title.   The defendant
pleaded the general issue, and thereby admitted posses-
sion of the premises sued for.   On these pleadings a trial

was had, resulting in a verdict in favor of the plaintiff for the premises in question. A motion was made for a new trial, which was refused, and upon this refusal the defendant assigned error, and brought the case here by bill of exceptions and writ of error.

The motion was made for a new trial upon these grounds:

(1.) Because the verdict is contrary to law and evidence and without evidence to support it.

(2.) That it is decidedly and strongly against the weight of evidence.

(3.) That the court erred in charging the jury that they should "find the line on the west side of the creek along with the fence of W. H. Preston up to the line of Davidson, at high water mark, and thence down said creek at high-water mark, if from the evidence they could ascertain where it was, but if they could not find the high-water mark, then they would be authorized to find for the plaintiff to the east bank of the creek,"—Defendant objecting to so much of this charge as related to the line of Wm. H. Preston's fence as being on the high-water mark or on a line with it.

(4.) That the court erred in charging, "When land is conveyed by metes and bounds, whether there be more or less than the quantity named in the deed, the purchaser obtained title to the whole of it."—It is claimed that this is error, because the jury mistook the meaning of the court; the evidence showing that the whole of the mill tract was thirty acres, over half of which was not in dispute, the effect of the charge was to withdraw from the consideration of the jury the quantity of land embraced in the entire tract in ascertaining what land was really conveyed by plaintiff's deed.

(5.) The verdict is erroneous in that it finds for the plaintiff land which never belonged to either of the parties litigant, viz., the land of Wm. H. Preston, no deed being introduced nor any other evidence fixing high-water mark at an along Wm. H. Preston's fence.

1. It is insisted in argument that there is a variance between the description of boundaries set forth in the declaration and that contained in the deed appended as a portion of the abstract of plaintiff's title. We do not find that this variance exists. The boundaries are more fully described in the declaration than in the deed from Pou to Newton and plaintiff. There are certain particulars in the former which are not found in the latter, which were doubtless averred to let in testimony applying the description to the subject-matter in controversy. But be this as it may, no exception was taken at the trial on account of the alleged variance, and no such question was submitted or passed upon by the court.

2. The third and fifth grounds of the motion for a new trial relate to the same subject, and will be considered together. The objection to the charge and verdict amounts to this, that there was error in making the fence of William H. Preston the high-water mark on that side of the creek, and that the jury, in following this instruction, found for the plaintiff a portion of the land of William H. Preston, to which neither of the parties litigant laid claim. We do not agree with either of these conclusions; the court did not charge the jury that William H. Preston's fence was at the line of the plaintiff, on the high-water mark; they were referred to the evidence to locate this line, and were instructed to follow it, if they could find from that source where it was. There was evidence as to the relative situation of this fence to the line of the high-water mark on that side of the creek. "Along" a line does not signify that an object must be on the line, but rather the reverse; along, in this sense, is used as the equivalent of up to, extending to, reaching to, and in this sense it is entirely consistent with the description contained in the deed from Pou to plaintiff and Newton.

The defendant admitted possession of the entire tract of land sued for. He did not by his pleading show, as he might have done, what portion of it he claimed, and what

he did not claim. He put in no disclaimer as to any of it; he insisted on his right to the whole. There was, by the pleadings, no special issue made as to the proper boundaries. This issue might have been presented either by a special plea or by a bill in equity in aid of the defence, but neither was done. The sole question for the jury to determine was which party had a right to the land in question, as they both claimed under a common grantor. Evidence was had as to what constituted high-water mark, in the understanding of the parties when the deed was made from Pou to Newton and plaintiff, which was older than defendant's deed, and which latter deed called for plaintiff's line as his boundary on that side of the creek. The land was sold to plaintiff for a mill-seat; it was probably intended that he should have all of it that might be covered by the pond made by damming up the stream to render it available for the purpose in view. This line being apparently in the contemplation of the parties, evidence was properly admitted, at least without objection from the defendant, to show the extent of the grant, in this phase of the case. There was evidence on which the jury could act, and which would authorize them to extend the line beyond the banks in which the stream, unobstructed by the dam, ordinarily ran.

If the defendant demanded more certain evidence, it was in his power to have procured it, either by a survey under the order of the court, and upon notice to his adversary (Rules of Court, 55 to 59, both inclusive; Code. p. 1353 Ibid., §578), or he might have had processioners appointed and the boundaries fixed by them. Code, §§2384, 3493.

It has been suggested that there will be difficulty in executing the writ of *habere facias possessionem* in this case. When this occurs, it will doubtless be properly disposed of by the court to which the writ is returnable. We cannot raise the question and give directions in advance. We have no jurisdiction or authority to interfere and give directions how to deal with a mere apprehended trouble.

3. The charge excepted to in the fourth ground of the motion was pertinent, and stated the principle of law embodied in it correctly. No exception is taken to it on this account; but it is insisted that the jury mistook the meaning of the court as to the quantity of land contained in the boundaries specified in the deed under which plaintiff claimed, and that they did not consider this fact in ascertaining the boundaries. It is not apparent to us that such was the case; it is very certain that no intimation was given by the court to that effect. The entire charge is not contained in the record, and we must presume that it was correct, and covered the point in question.

4. While the verdict was not, perhaps, required by the evidence, we are of opinion that it is supported by it, and the presiding judge being satisfied that it was proper, we cannot, under well settled rules, interfere to set it aside. He has the discretion to act in the case, and so far from abusing, he appears to have exercised it soundly and legally.

Judgment affirmed.