PERKINS MANUFACTURING CO. *v.* WILLIAMS.

1. Whether or not a deficiency in the quantity of land sold by the tract and described as so many acres, "more or less," is "so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud," is, ordinarily, a question of fact to be decided by the jury in view of all the circumstances of the particular case, and not one of law for determination by the court. An exception may arise "in such extraordinary and pronounced cases as would afford no room for difference of opinion." Under the facts disclosed by the record, the present case falls within the general rule.

2. Where a deed conveyed absolutely to the grantee and his heirs and assigns all the saw-mill timber on a given tract of land, with the privilege of boxing the same for turpentine purposes for a designated period, and with "full privileges" to the grantee, his heirs and assigns, "of right of way for railroad, tramroads and wagon roads across said tract of land during the time of this saw-mill operation in that section," trees of a specified size being expressly excepted from the operation of the deed, such grantee is not liable to the grantor for damages caused by the cutting or boxing of the excepted trees, during the period indicated, by a third person to whom the grantee had leased the turpentine privileges upon the land, the lease to that person itself expressly declaring that no trees of this description were to be boxed by him.

May 4, 1896. Argued at the last term.

Complaint for damages. Before Judge Reese. Glascock superior court. August term, 1895.

*Rawlings & Hardwick* and *Evans & Evans*, for plaintiff. *James Whitehead*, for defendant.

SIMMONS, Chief Justice.

The Perkins Manufacturing Company, in 1887, purchased from Williams the saw-mill timber on a certain tract of land described in the deed as "containing 672 acres more or less," for which it paid him $1,300. It subsequently ascertained that there was a deficiency in the number of acres, and brought suit against Williams, alleging that "the discrepancy is so glaring as of itself to suggest fraud and deception; that the warranty in the deed was intended to

cover not only the title to the land but also the number of acres conveyed," and that by reason of the deficiency the plaintiff was damaged $1,000. Williams in his answer admitted that there were only 465 1-2 acres. Upon the trial of the case, counsel for the plaintiff requested the court to charge the jury that "it being conceded by the plea of defendant that the tract of land contained 465 1-2 acres only, and that the amount stated in the deed is 672 acres more or less, therefore I charge you as matter of law that the discrepancy is so gross as to justify the suspicion of wilful deception or mistake amounting to fraud." The court refused to give this in charge, and the refusal is complained of as an error.

1. The words "more or less" will cover any deficiency not so gross as to justify the suspicion of wilful deception, or mistake amounting to fraud. (Code, §2642.) Questions of fraud or of what amounts to fraud in a particular case are generally for determination by the jury. Each case presents its own peculiar facts. The deficiency in one case is greater than in another. The purpose for which the land is purchased is very different in one case from what it is in another. If a man should purchase land for a mill-site, the water-power would be the principal thing he would have in view; he would not care so much for the number of acres as he would for the mill-site, and would therefore pay less attention to the representations of the vendor as to the number of acres than he would if he were buying merely for the purpose of cultivation. The suspicion of wilful deception or of mistake amounting to fraud "could not arise or be justified unless some suggestion of fraud or gross mistake would occur to the mind as probable in consequence of the magnitude of the deficiency, in view of the object of the purchase and all the attending circumstances;" and whether, in a given instance, such a suspicion is justified, is, in ordinary cases, as was said by Bleckley, C. J., in *Estes* v. *Odom*, 91 *Ga.* 605, "a question of fact to be

decided by the jury on all the circumstances of the particular case, including as one of the main considerations the object of the purchase (if any in particular) as understood between the parties at the time of the transaction." "In such extraordinary and pronounced cases as would afford no room for difference of opinion, that question could doubtless be decided by the court hypothetically as one of law. The deficiency might be so slight and trivial on the one hand, or so excessive on the other, as either to present nothing whatever for trial by the jury beyond ascertaining the extent of the deficiency, or limit their functions to that and to the ultimate question, together with the assessment of damages." Under the facts in evidence, we think the present case falls within the general rule, and that the court did not err in refusing to give in charge the request above quoted.

2. The deed made by Williams to the plaintiff conveyed to the grantee and its heirs and assigns, all the saw-mill timber on the tract described therein, except certain specified trees, with the privilege of boxing the trees for turpentine purposes for six years and with "full privileges of right of way for railroad, tramroads and wagon roads across said tract of land during the time of this saw-mill operation in that section." The trees excepted were one hundred to be marked by Williams, and all trees "measuring under fourteen inches at usual stump height," it being stipulated that no such trees should be cut or boxed. Williams in his answer to the action pleaded, that the plaintiff had violated this stipulation, and had cut and boxed the hundred trees he had reserved, thereby damaging him $500, and had boxed all the trees on the land measuring under fourteen inches at usual stump height, thereby damaging him $1,000. It appears from the evidence that the plaintiff had sold to Blue & Co. the privilege of boxing the timber on the tract, except trees measuring under fourteen inches at usual stump height; and that the boxing of trees under that size,

if done at all, was done by Blue & Co., and not by the plain-
tiff. The court charged the jury, in substance, that as it
was conceded that the plaintiff released to Blue & Co. and
thus permitted and licensed Blue & Co. to enter into pos-
session of the premises under their conveyance, the plaintiff
became answerable for the acts of Blue & Co. in the
premises, to the same extent as it would be chargeable with
its own acts operating under the conveyance, and if Blue
& Co. cut and boxed trees under fourteen inches in
diameter at the usual stump height while operating under
the license of the plaintiff, the plaintiff was liable to the de-
fendant for such damages as resulted therefrom to the de-
fendant. Under the facts of the case we think this part of
the charge was erroneous. The deed from Williams to the
Perkins Manufacturing Company conveyed title to the tim-
ber to the grantee and its assigns. It also conveyed the
right to build railroads and tramroads to the grantee and
its assigns. The grantee sold to Blue & Co. the privilege
of boxing the timber for turpentine purposes. Under the
deed from Williams, the grantee had the legal title to the
standing timber, and the right to sell the privilege of box-
ing the trees, and therefore had the right to make the stip-
ulation as to cutting and boxing the one hundred trees and
boxing trees under fourteen inches. The conveyance to
Blue & Co. was not a mere license, but was a sale of so
much of the timber as was necessary for turpentine pur-
poses. (*Coody* v. *Gress Lumber Co.*, 82 *Ga.* 793; *Mor-
gan* v. *Perkins*, 94 *Ga.* 353.) Blue & Co. were not agents
or mere licensees of the Perkins Manufacturing Company,
nor were they tenants of the company. If therefore they
violated the stipulation in the deed by cutting and boxing
timber which had been reserved, they, and not their ven-
dors, were answerable for the damages occasioned thereby.
The stipulation in each deed was in the nature of a cove-
nant running with the land. It was a covenant for the
benefit of the land, and created a privity in estate between

the original grantor and the assignees of the original grantee; and inasmuch as the Perkins Manufacturing Company did not break the covenant, but Blue & Co., its assignees, did, Blue & Co. are liable, and not the Perkins Manufacturing Company. See 1 Warvelle, Vendors, 422.

*Judgment reversed.*