## KENDALL *et al. v.* WELLS.

1. A deed based upon the express consideration of $371 described the land conveyed as follows: "A certain tract of land in the 8th land district of Colquitt county, Ga., known and described in the plan of said 8th district as part of west half of land lot No. 85 containing fifty (50) acres in the southwest corner of said lot 85, and bounded as follows to wit: commencing on the south line of said lot 85, on the west side of Georgia Northern Railway Co. railroad and 100 feet from the center of the railroad track, and running west 34 chains along said land line to the southwest corner of said lot 85, thence north along west land line said lot 85 13 chains to stake, thence east 25 chains to within one hundred feet Ga. Northern Ry. track to a stake, thence south along said right of way to place of commencing:" *Held*, that this was a conveyance of land by the tract and not by the acre.

2. Where land has been sold and conveyed by the tract, the number of acres

being mentioned in the deed only as part of the description and not by way of covenant, in the absence of actual fraud no recovery can be had by the purchaser against the vendor on account of a deficiency in quantity.

3. The allegations of the declaration were not sufficient on the subject of fraud, or want of knowledge by the vendee, or what opportunity he had for knowledge.

Submitted March 3, — Decided August 17, 1906.

Action for breach of warranty. Before Judge Mitchell. Colquitt superior court. April 6, 1905.

*J. A. Wilkes* and *Shipp & Kline,* for plaintiffs in error.

*E. L. Bryan, Y. L. Watson,* and *W. C. McCall,* contra.

LUMPKIN, J. Two controlling questions are raised in this case: (1) Were the allegations of deficiency in the number of acres contained in the tract of land conveyed alone sufficient to show that the plaintiff was entitled to recover; (2) if not, were the allegations as to misrepresentation or fraud in regard to quantity sufficient? In 2 Devlin on Deeds (2d ed.), § 1044, it is said: "In the description of land it is usual, after the description by metes and bounds or subdivisions, to add a clause stating that the land described contained so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it can not control the rest of the description. Neither party has a remedy against the other for the excess or deficiency, unless the difference is so great as to afford a presumption of fraud." The language may be such, however, as to make quantity the controlling element in the description. Id. § 1045; 1 Jones on Real Property, §§ 398, 401; *Strickland* v. *Hutchinson,* 123 *Ga.* 396. In 4 Kent's Com. (14th ed.) *467, it is said: "Whenever it appears by definite boundaries, or by words of qualification, as 'more or less,' or as 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed is mere matter of description, and not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case." See also 1 Jones on Real Property, §§ 398, 399, 400; Rawle on Covenants (5th ed.), § 297; 3 Washburn on Real Prop-

erty (6th ed.)', § 2322; 1 Warvelle on Vendors, § 381; *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 842; Jackson v. McConnell, 19 Wend. 175, 32 Am. Dec. 439; Powell v. Clark, 5 Mass. 355, 4 Am. Dec. 67; Wright v. Wright, 34 Ala. 194.

In Warvelle on Vendors, § 834, after discussing the status of executory and executed contracts in reference to the matter of deficiency of quantity of land, the author adopts the classification made from the decision in Harrison v. Talbot, 2 Dana (Ky.), 258, which is worthy of consideration. Though of some length it is' here copied. "Where a sale is of a specific tract by name or description, each party taking the risk of quantity, the sale is said to be in gross. These sales may be classified as follows: (1) Sales strictly and essentially by the tract without reference in the negotiation or in the consideration to any designated or estimated quantity of acres. (2) Sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference is made only for the purpose of description, and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract. (3) Sales in which it is evident from extraneous circumstances of locality, value, price, time, and the contract and conversation of the parties, they did not contemplate or intend to risk more than the usual rates of excess or deficiency in similar cases or than such as might reasonably be calculated on as within the range of ordinary contingency. (4) Sales which, though technically deemed and denominated sales in gross, are in fact sales by the acre, and so understood by the parties. Contracts belonging to either of the two first-mentioned classes, whether executed or executory, are not susceptible of modification or rescission, in the absence of fraud; but in sales of either of the latter kinds an unreasonable surplus or deficit may entitle the injured party to relief unless he has by his conduct waived or forfeited his equity." This decision has been much cited, but it, as well that of Blessing's adm'rs v. Beatty, 1 Rob. (Va.) 287, is severely criticised in the elaborate decision in Crislip v. Cain, 19 W. Va. 438, where it was held that for an honest mistake as to quantity, unmixed with fraud, and where neither party is more to blame than the other, the only remedy would be by rescission; and that any

allowance for deficiency·in such a·case by a court of equity would be in effect to make a new contract for' the parties. The court also discussed what evidence was admissible to explain ·the statement of the number of acres in a description, and when admissible, and what evidence was admissible to show fraud. It also 'declared that all contracts of sale by the tract were contracts of hazard on the part of the vendor, and 'that the allowance of an apportionment for a deficiency was in the nature of allowing damages for a fraud perpetrated by the vendor on the vendee. This decision covers one hundred and twenty-six printed pages of the report in which it was published, but it encountered the danger incident to so much elaboration (a danger which the writer of this opinion may possibly not escape), and in Newman *v*. Kay, 57 W. Va. 98, 49 S. E. Rep. 926, it was itself disapproved in· so far as it held that a contract of sale of land in gross might be rescinded on the ground of a¨ mutual mistake as to the quantity of land in the tract sold, resulting in a large excess or deficiency, no other ground for relief being shown. In the case last referred to there is a discussion of both excess and deficiency. Another much cited case on the subject is that of O'Connell *v*. Duke, 29 Tex. 299, where a vendor brought suit to rescind the sale of a tract of land on the ground of a mistake as to the quantity it contained. If the conveyance is clearly by the tract, it has been held in this State that parol evidence is not admissible to prove that it was in fact by the acre. Whether, as in West Virginia, parol evidence is ever admissible on the theory of ambiguity, or as in Kentucky, for the purpose stated in the case of Harrison *v*. Talbot, supra, is not here involved.

Did the recital of the number of acres mentioned in the deed now under consideration constitute a covenant, or only form a part of the description? This question is answered in the case of *Longino* v. *Latham,* 93 *Ga.* 274. The headnote (there being no opinion) is as follows: "A public sale of land by an administrator, under the description of 'a certain tract or parcel of land situated in the 9th district of originally Fayette, now Campbell county, Ga., being one hundred and sixty-five acres of lot of land No. 129, being all of said lot of land· except thirty-seven acres in the northeast corner of said lot,' is a sale by the tract and not by the acre; and a deficiency in the number of acres specified, there being no fraud alleged, is ·no ground· for making any deduction

from the amount of the purchaser's bid, that amount being a gross sum for the whole tract or parcel sold." The deficiency there alleged was thirty-seven acres out of one hundred and sixty granted in the deed. See also *Turner* v. *Rives,* 75 *Ga.* 606; *Walker* v. *Bryant,* 112 *Ga.* 417; *Benton* v. *Horsley,* 71 *Ga.* 619. Section 3542 of the Civil Code reads as follows: "In a sale of lands, if the purchase is per acre, a deficiency in the number of acres may be apportioned in the price. If the sale is by the tract or entire body, a deficiency in the quantity sold can not be apportioned. If the quantity is specified as "more or less," this qualification will cover any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud; in this event the deficiency is apportionable; the purchaser may demand a rescission of the sale or an apportionment of the price according to the relative value." An examination of this section will show that it deals with the matter of deficiency of quantity of land under three sets of circumstances: (1) where the sale is made by the acre; (2) where it is by the entire tract or body; (3) where the quantity is specified as "more or less." Where these words are used, it is declared that they will cover any deficiency not so gross as to justify the suspicion of willful deception or mistake amounting to fraud. In that event there may be an apportionment or a rescission. In *Seegar* v. *Smith,* 78 *Ga.* 616, it was said (p. 618) that this was true whether the sale was by the tract or by the acre, and that the purchaser was not obliged to claim a rescission, but might have an apportionment. In that case it was claimed by one side that there was a sale by the acre, and by the other that the sale was by the tract, specifying the quantity as so many acres more or less. What was said in the second headnote must be read in the light of the opinion which stated that the case was sent back for a jury to pass on the issues. The size of the deficiency was treated as a matter of fact rather than a determination as matter of law that any particular deficiency would furnish an invariable rule. In that case also certain evidence was illegally rejected. In that part of the code section quoted which relates to the subject of a deed stating the quantity as "more or less" nothing is expressly said as to a deed where the description of the tract of land mentions a certain number of acres but does not add the words "more or less." Clearly it was not intended that the addition of those words would give a

superior right of apportionment for a deficiency, where it would not exist without them. To so hold would reduce this provision of the section to an absurdity. Thus to say that if a tract of land is described as containing one hundred acres, and it really contains fifty, the purchaser will be without remedy; but if to the description be added the words "more or less," the purchaser will have a remedy (it being for the jury to say whether such a deficiency was sufficient to raise a suspicion of willful deception or mistake amounting to fraud), would be in effect to say that the more vague and indefinite the description the greater the right of the purchaser to recover for a deficiency. This section never meant to declare that the right of a purchaser to apportion for a deficiency is in inverse ratio to the definiteness of the description in his deed. One of two things must be the case: either that the sale of land by the tract, containing as part of the description a statement of the number of acres, stands on the same basis, whether or not the words "more or less" be added; or that it has a better standing without those words. It certainly could have no worse. This section was not a legislative enactment, but a codification. In *Beall* v. *Berkhalter,* 26 *Ga.* 567 (decided in 1858, before the first codification of the laws in this State), it was said: "When the words more or less are annexed to the quantity of land, it is against principle that the vendor should be responsible to assure any given number of acres, unless he practiced fraud upon the purchaser. These words should have been held to be used, as they no doubt were originally, to protect him against any such disability; it would have saved an incalculable amount of litigation, as every rule which is fixed and certain does. But it is too late, perhaps, to establish such a doctrine in the face of such an amount of judicial interpretation to the contrary. The decisions are, that these words are intended only to protect the seller against a small deficiency where there is an approximation to the quantity of acres mentioned." With this decision doubtless before them, the codifiers intended to express the risk which was covered by the words "more or less," not to confer any additional right by their use. The principle is stated somewhat more strongly than in some of the States. In *Estes* v. *Odom,* 91 *Ga.* 600, it was held, that, by accepting a deed to land sold by the tract, in which the words "more or less" were used, "the vendee waives not only any mistake, but any deception as to quan-

tity, unless (keeping in view the object of the purchase and all the attendant circumstances) some willful deception or gross mistake would, after ascertaining the true quantity, be suggested to the mind by a mere comparison of that quantity with the quantity named." But it was held that this was ordinarily a question for the jury rather than for the court. The deed there involved described the land as containing forty acres more or less. There were really seven acres less, and the fraud alleged was that the seller knowingly represented that the tract contained forty-one and a quarter acres. See also *Perkins Mfg. Co.* v. *Williams,* 98 *Ga.* 388; *Seymore* v. *Rice,* 94 *Ga.* 184.

In an elaborate opinion in the case of Harrison v. Talbot, 2 Dana (Ky.), 258, Chief Justice Robertson reviewed numerous authorities and said: "The equity of each case must depend on its own peculiar circumstances. The relative extent of the surplus or deficit can not, per se, furnish an infallible criterion. The conduct of the parties—the date of the contract—the value, and extent, and locality of the land—the price—and other nameless circumstances are always important and generally decisive." Under the decisions in *Estes* v. *Odom* and *Perkins Mfg. Co.* v. *Williams,* supra, each case presents its own particular facts, and the nature and character of the property, the purpose for which it was purchased, and all the attending circumstances may be proved, not for the purpose of contradicting the contract, but of throwing light on the question of whether there was fraud, and whether or not a deficiency in quantity sold by the tract, even where described as so many acres more or less, is so gross as to justify the suspicion of willful deception or mistake amounting to fraud. In Noble v. Googins, 99 Mass. 231, it was said (p. 234): "The American courts have shown more unwillingness than the English to encourage litigation about the amount of the price by reason of a variation in the quantity of land agreed to be conveyed, without clear evidence that the quantity was made an essential element of the bargain." In that case the land was described by boundaries, and one line was recited as "measuring about two hundred and twenty feet on C. street, more or less." In fact it measured only one hundred and seventy feet, and the lot was proportionately less valuable. It was held, that, in the absence of fraud, the purchaser was not entitled to an abatement of the stipulated price.

In *Gauldin* v. *Shehee,* 20 *Ga.* 531 (4), it was said: "The fraudlent misrepresentation of the vendor, as to the quantity of his river bottom land, which constituted a material inducement to the trade, and which the vendee was prevented by high water from examining, will entitle the purchaser to relief." It is true that the quality as well as the quantity of the unseen land was here involved, but the ruling evidently contemplated not merely misrepresentation, but fraudulent misrepresentation or actual fraud. The present case is not one of executory contract; but the sale has been executed, the deed has been made, the purchaser placed in possession, and the suit has been brought some two years and a half after the date of the deed. It does not purport to be based upon any mutual mistake, nor does it seek to obtain rescission or reformation of a deed. The effort is to retain possession of the property and to recover for the alleged deficiency, on the ground that the representation of the vendor was false. It may be analogized to an action for deceit, in which there must be willful misrepresentation of a material fact, or knowledge of a falsehood stated, or a fraudulent or reckless representation of a fact as true, though not known to be false, yet intended to deceive. *Smith* v. *Dudley,* 69 *Ga.* 78(3). As to the particular point now under consideration, the description by metes and bounds with the addition of the recital of the number of acres is often discussed by text-writers and judges together with the employment of such words as "more or less" or similar expressions. Thus in 2 Warvelle on Vendors, § 832, it is said: "The difficulty arises in determining whether the sale was intended to be in gross or by the acre. If the former, the authorities are unanimous in declaring that the mention of quantity of acres after another and certain description, whether by metes and bounds or other known specifications, is not a covenant or agreement as to the quantity to be conveyed, particularly if qualified by the terms 'more or less,' or 'containing by estimation,' or similar expressions. In such case the statement of acreage is regarded as mere matter of description, and not of the contract; the purchaser, as a general rule, taking the risk of the quantity, provided there be no intermixture of fraud." See also 4 Kent's Com. *467, supra, and authorities above cited. This seems to treat the difference rather as one of degree than of kind. Where the words "more or less" are used, as stated in *Estes* v. *Odom,* supra, the deficiency must be so great as that a mere com-

parison of the quantity stated in the description and the actual quantity will suffice to suggest fraud. Where these words are not used, this is not so. But the existence of actual fraud or gross mistake amounting to fraud, in order to obtain an apportionment, appears to have been treated as necessary in either case. In *Finney v. Morris,* 116 *Ga.* 758, supra, it was held, that, "Where land is sold by the tract and described in the conveyance as so many acres, 'more or less,' a deficiency in the number of acres actually conveyed to the purchaser will not authorize an apportionment in the price agreed to be paid, if the purchaser admits there was no intentional fraud upon the part of the vendor." In *Wylly* v. *Gazan,* 69 *Ga.* 506, 516, the principle of section 3542 of the Civil Code was applied to a sale of a city lot, and it was said: "If the sale is by the entire tract or lot, and the quantity is specified as 'more or less,' this qualification will cover any deficiency not so gross as to justify the suspicion of willful deception, or mistake amounting to fraud. Code, § 2642. This court, in the case of *Walton* vs. *Ramsay,* 50 *Ga.* 618, considered this section of the code in connection with former decisions, and came to the conclusion, that if there is actual fraud and deception on the part of the vendor of the land, or the deficiency is so gross as to be evidence of it, then the deficiency may be apportioned, but not otherwise. They considered in that case how far this rule had been modified by the element of legal fraud, introduced into the code, and concluded that it was not affected by it. The case settles another important principle, that where the parties have equal opportunities of judging, they must avail themselves of those opportunities, or they are precluded from setting up a claim to relief." If the same general rule in regard to the necessity for fraud applies to a conveyance by the tract, although in adtion to giving metes and bounds there is a statement of quantity as matter of description, not of covenant, it must follow that the fraud in such case must also be of the same character, and that the representations must have been of a material fact and made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party. In Adams' Eq. (8th ed.) *177, 178, it is said: "The requirement that the representation shall be not only false, but false within the knowledge of the party making it, distinguishes a fraudulent representation inducing to a contract from an erroneous affirmation embodied in it by way of warranty

or covenant. Affirmations of this latter kind bind the party making them, although he were himself honestly mistaken, because he explicitly agreed that they should do so; but if a warranty or covenant is not given, a mere representation honestly made, and believed at the time to be true by the party making it, though not true in fact, does not amount to fraud." Spence v. Duren, 3 Ala. 251; Ormrod v. Huth, 14 Mee. & W. 651. If this was the law before the code, and if the code made no change as to the character of fraud required under this section (as has been held), it follows that actual fraud must be shown to authorize an apportionment, however it may be as to rescission. But for previous rulings, it might be argued with force that the code did make a change. In the case of *Leyden* v. *Hickman,* 75 *Ga.* 684, the representations were charged to be false and fraudulent, and the employment of artifice to prevent examination was alleged. In *Seymore* v. *Rice,* 94 *Ga.* 183, there were allegations of actual fraud, and the question as to what evidence was sufficient to make out a prima facie case. In the opinion Mr. Justice Lumpkin said: "The deficiency of 51 acres in a tract of this size was quite considerable, and it was the province of the jury, and not of the court, to say whether or not Rice was guilty of actual and willful deceit in making the sale." In *Seegar* v. *Smith,* 78 *Ga.* 616, the ruling was on the subject of the evidence, not the pleadings; and it was merely held that the verdict was contrary to the evidence. In *Estes* v. *Odom,* 91 *Ga.* 607 (a case where the words "more or less" were used), Chief Justice Bleckley said: "The same facts which justify the suspicion may prove the fraud, prima facie." The difference between a necessary allegation in a declaration and the evidence which may be sufficient to sustain such allegation is clear. In this declaration it is not alleged whether the defendants made misrepresentations willfully to deceive, or recklessly without knowledge; nor (except by implication) whether the plaintiff was ignorant of the facts; nor what opportunity he had for knowing them. These allegations are attacked by special demurrer. If land is sold by the acre, generally an apportionment for a deficiency is to be made proportionally to the number of acres in the deficiency. Yost v. Mollicott's admr., 77 Va. 610. But there are exceptional cases where it is otherwise.

It is further contended that there are no allegations to show

that the defendants prevented the plaintiff from examining the land lines and having a survey made. In *Estes* v. *Odom,* 91 *Ga.* 604 (4), it is held: "Previous knowledge of the land or its boundaries would not preclude the vendee from recovering for fraudulent misrepresentations of quantity, if without fault on his part he was actually deceived and defrauded by the misrepresentation, provided the deficiency was more than could be fairly covered in the given instance by the phrase 'more or less.' "

As the declaration was amended the other grounds of the special demurrer were without merit. A reversal must result because of the overruling of the grounds of the demurrer dealt with above.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*