## 59075, 59076. WOODSTOCK VILLAGE v. FOWLER; and vice versa.

BIRDSONG, Judge.

Land purchased price apportionment and abatement. Woodstock Village, a land development partnership composed of Wright, Roberts, Negri, and Woods entered into negotiations with Fowler to purchase land in Cherokee County. Woodstock desired to purchase a 175 x 175 foot section of land from Fowler that lay at the intersection of State Routes 92 and 5. Woodstock offered Fowler $100,000 for the tract of land. Fowler declined to sell the described tract but countered with an offer to sell the land at the intersection together with several other acres contiguous to the corner tract. Woodstock considered the offer of the larger tract and because of additional needs subsequently decided to buy an even larger tract composed of almost twelve acres with an ultimate purchase price of $244,644.24. There was unrebutted testimony that the smaller corner tract was the "most valuable land in Cherokee County." At the time of the purchase by Woodstock, there was an approximately fifty-foot right-of-way in the State of Georgia running alongside State Routes 92 and 5 on the land purchased from Fowler by Woodstock. Fowler's land and the rights-of-way appeared to be separated by a fence. It seems clear and was accepted by the jury that Fowler intended to convey to Woodstock all the land in the corner tract up to the right angle created by the intersection of Routes 92 and 5, and that Woodstock believed they were purchasing right up to the intersection, excluding the rights-of-way. In point of fact, approximately twelve years earlier when the state obtained

the rights-of-way for Routes 92 and 5 and specifically at the questioned intersection, Fowler also deeded to the state a triangular portion of his land at the intersection. At a point one hundred feet west of the intersection along Highway 92, a stake was placed. One hundred feet south of the intersection along Highway 5, another stake was placed. These two stakes were joined by a surveyor's line of approximately 144 feet forming the triangle of about 5,000 square feet. Fowler had conveyed this triangle by warranty deed to the state as a part of the right-of-way. Thus, instead of Fowler conveying to Woodstock the entire tract including the corner formed by the right angle at the intersection of Highways 92 and 5, the corner was mitered by a 5,000 foot triangle which was no longer owned by Fowler; and consequently, because of the defect in the deed to Woodstock, that 5,000 foot triangle was not effectively deeded to Woodstock.

Woodstock commenced development of the entire tract and placed a shopping center thereon. During the development,

Woodstock became aware that it did not have clear title to the 5,000 square foot triangle mitered across the intersection of the two highways. Because of their previous development, Woodstock declined to seek rescission of the contract but sought abatement of the purchase price. Woodstock offered evidence that the partial 175 x 175 foot area at the intersection was reasonably valued at $100,000 with the mitered corner intact, but was worth only $50,000 with the triangle missing. This was computed by their expert witness by assessing the value of the missing triangle at $16,350, together with consequential damages to the original 175 x 175 foot tract sought to be purchased by Woodstock for $33,650. Woodstock sought to offer documentary evidence that in the original sales contract, Fowler was to release "Tract 1" (the original 175 x 175 foot parcel) upon the payment of $100,000 by Woodstock, with three other tracts to be released following smaller designated payments. This evidence was offered to show the valuation placed upon the property (in parcels) by Woodstock as well as Fowler. The trial court excluded from evidence the sales contract and promissory note which showed the division of the land into four separate parcels for release purposes and tended to place some separate degree of evaluation on each parcel. The rationale of the trial court was that the land was sold by the tract and that apportionment would be determined, if at all, by taking the total value of the entire tract, allocating a value per acre, and placing a value on the missing triangle in direct ratio to the value of the triangle to the whole tract. Under such formula the missing triangle presumably would have had a value of about $2,600, inasmuch as the missing triangle constituted approximately 12-1/2% (one-eighth) of one acre within the entire 11.781 acre tract. The trial court charged that the correct measure of damages would be derived by applying the formula of measuring the relative value of the tract included within the false boundary (including the triangle) against the tract embraced in the true boundary (excluding the triangle). The difference in the value of the total property with and without the missing triangle could constitute the actual pro rata damages and amount to be apportioned. Inasmuch as Woodstock complained in one count that Fowler had acted with deceit and fraud by selling land that he knew he had already conveyed to another, Woodstock sought punitive damages as well. The jury returned a nonspecific verdict of $4,500 in favor of Woodstock.

Woodstock, in several enumerations of error, complains that the trial court erroneously excluded the evidence of the $100,000

contractual value placed upon "Tract 1"; by limiting the evidence and the jury's consideration to an improper measure of damages under Code Ann. § 29-202; that the measure of damages was limited to a strict pro rata value based upon the per-acre price of the entire tract, rather than the actual value of the smaller, but more valuable, one-eighth of an acre comprising Tract 1; and inferentially excluded any interest on payments made for property purchased but not received. The court denied a motion for new trial upon these grounds and also denied a motion by Fowler for directed verdict and judgment n. o. v. on the grounds that there was no evidence to support a finding that Fowler acted with fraud in the sale of the property. It is the denial of these respective motions that forms the basis for the appeals by Woodstock (No. 59075) and Fowler (No. 59076). *Held:*

1. Code Ann. § 29-202, upon which the trial court relied in excluding the evidence of value as to a portion of the property as opposed to the whole tract and in charging the jury as to the measure of damages, provides as follows: "Purchaser losing land from defect of title, rights of — If the purchaser loses part of the land from defect of title, he may claim . . . a reduction of the price according to the relative value of the land so lost." The sole question troubling the trial court was the meaning of the words *"relative value"* In determining the meaning of those words, the trial court relied on *McConnell v. White,* 91 Ga. App. 92, 96 (85 SE2d 75), wherein that case held: "We have not found where the words 'relative value' as used in Code § 29-202 have been exactly defined. We conclude, after much concern and deliberation, that the expression means relative value with the purchase price as a base value of the whole, for the reason that, where rescission is not sought, the only remedy is a reduction in purchase price. Any other interpretation might result in the recovery by a purchaser of more than the purchase price, if the land lost was worth more at the time of breach of contract or bond than the whole land originally bargained for. *Smith v. Kirkpatrick,* 79 Ga. 410 (7 SE 258), confirms this conclusion, as does the case it cites [*Hook v. Stovall, Dunn & Co.,* 30 Ga. 418, involving the sale of a sickly slave represented as healthy]."

*Smith v. Kirkpatrick,* supra, established the rule as that utilized by the trial court in its charge to the jury, i. e., "The correct deduction will result from applying this formulary: As the value of the false tract was to the value of the true tract, so is the agreed price to the amount to be paid. In other words, as the whole value was to the part value received, so is the whole price to the part price which ought to be paid." The rule was amplified as follows: "When a lot of

land is sold by number [tract], and one of the boundaries is misrepresented, whereby the purchaser fails to get some of the land he bought, the deduction to be made from the agreed price (in an action for the purchase money) is *generally* in proportion to the value of the tract with the boundaries as represented, and its value with the true boundaries, computing value as at the time when the sale was made." (Emphasis supplied.) *Smith v. Kirkpatrick,* supra.

We emphasize the word "generally" as used in the *Smith* decision, supra, as having great significance. Other cases have considered the apportionment of purchase price where the vendee received less than he bargained for in the sale from the vendor. For instance in *Estes v. Odom,* 91 Ga. 600, 609 (18 SE 355), it was held: "He [the vendee] was entitled to have what he bought and paid for, and if the fraud of the other party deprived him of a part of the same so considerable that the fraud is manifested *prima facie,* or fairly suggested as probable, by the grossness of the deficiency, the *minimum* recovery should be the amount paid for the deficiency, with interest thereon from the time of payment." (Emphasis supplied.) In *White v. Adams,* 7 Ga.App. 764, 765 (68 SE 271), the rule was stated: "In *ordinary* cases it would be fair to deduct from the purchase-price a sum derived by multiplying the number of acres in the deficiency by the average price per acre. But there are exceptional and extraordinary cases in which this rule does not apply." (Emphasis supplied.) Likewise in *Kendall v. Wells,* 126 Ga. 343, 352 (55 SE 41), it was said: "If land is sold by the acre, generally an apportionment for a deficiency is to be made proportionally to the number of acres in the deficiency. . . . But there are exceptional cases where it is otherwise." In *Halliburton v. Collier,* 75 Ga. App. 316, 324 (43 SE2d 339), it was held: "In actions for recovery for deficiency in land the measure of damages *generally* is the pro rata part of the purchase-money paid . . . with interest. It is not less than this. *Estes v. Odom.* . . However, where a part of such property may be of greater value than other portions this is not necessarily a fixed rule. *White v. Adams* . . ." (Emphasis supplied.) Finally, we note that in *Milner v. Tyler,* 9 Ga. App. 659, 660 (71 SE 1123), it was held: "There are cases where the apportionment according to relative value is not to be determined by a mere comparison of the number of acres described in the bond for title with the admitted deficiency, though that is the ordinary rule by which the calculation is to be made."

We are persuaded that the trial court in this case erred in inflexibly applying the rule of strict apportionment. The evidence

in this case showed conclusively that a portion of the land was much more valuable than the rest and that the land misrepresented and not conveyed lay within the most valuable portion rather than in the less valuable portion. Under such circumstances, the trial court should have allowed the excluded evidence which would have contributed to the jury's understanding of the value of the land not conveyed in relation to the total purchase price. *Halliburton v. Collier,* supra. We are not here concerned with Woodstock recovering more than the actual purchase price, the fear expressed in *Hook v. Stovall, Dunn & Co.,* supra, *Smith v. Kirkpatrick,* supra, and *McConnell v. White,* supra. Woodstock paid in excess of $244,000 for the tract and at most was seeking an apportionment of a percentage of the total purchase price. We, too, bridle at the thought of unjust enrichment wherein a purchaser could keep the property and recover more than he paid for it. *Hook v. Stovall, Dunn & Co.,* supra.

Inasmuch as the trial court allowed some evidence of the enhanced value of the missing tract in relation to the remainder of the property conveyed (and the jury returned a verdict greater than a pro rata value), we consider the principal error in this case to be that portion of the trial court's charge which limited the jury's consideration of damages to a strict pro rata comparison of the size and value of the missing portion in relation to the total size and value of the entire tract. In view of the contentions of the parties and the evidence admitted, this error could have been avoided by giving the jury the option of deciding whether there were differing values as to different portions of the land and if so, allowing the jury to apply an enhanced value standard in the determination of appropriate damages. If the jury found no enhanced value, then the standard rule of apportionment could have been applied.

2. In spite of the above holding, we agree with the trial court that any evidence of consequential damages was inadmissible and that the issue of consequential damages was not properly a matter for the jury. All parties, including the court, accepted the premise that the right to recover was based upon Code Ann. § 29-202, not including rescission. Thus, all that was before the jury was an apportionment of the purchase price, and the extent thereof. This was not a condemnation proceeding so as to bring into play the question of consequential damages as to property properly conveyed under the contract. Consequential damages are awarded for residual damage to land after the taking of a portion of the tract or of a contiguous tract. Woodstock seeks abatement of purchase price because less was actually conveyed than was paid for; in this re-

spect, the land truly conveyed was not damaged by the false conveyance of the other, for in legal contemplation the latter was never conveyed and the former was all that was. Should Woodstock successfully establish at a new trial that Fowler's grant was tainted with fraud, we do not mean to imply that interest on any amount paid for the missing tract or that punitive damages would be improper. That is a matter for a jury under appropriate instructions.

3. For the reasons stated in the preceding divisions, we reverse the judgment in Case No. 59075. In view of our disposition and the discussion leading thereto, we will not further address the remainder of Woodstock's enumerations. It is not likely that the errors alleged will occur at a new trial.

4. Fowler, in his cross appeal in Case No. 59076, complains that the trial court erred in denying his motion for directed verdict on the count of fraudulent transfer (the only count before us) and the subsequent denial of his motion for judgment n. o. v. He bases this appeal on the assertion that there is no competent evidence that Fowler knew the triangle had been conveyed to the state. Contrary to Fowler's contention, there was competent evidence before the court that Fowler signed a warranty deed to the state in 1961 conveying the rights-of-way contiguous to his property alongside Highways 92 and 5 and also expressly granted the triangular corner under consideration. Thus, there was presented to the jury evidence, though conflicting, that Fowler did know that he no longer possessed the mitered corner and that he misrepresented to Woodstock that he was seized of the corner and intended to convey what he knew he did not own. One signing a written document without reading it, unless prevented from doing so by fraud or artifice (a fact not shown to be true in this case), is chargeable with knowledge of its contents. *Musgrove v. Musgrove,* 213 Ga. 610, 612 (3) (100 SE2d 577), *Saddler v. Cotton States Life & Health Ins. Co.,* 101 Ga. App. 866 (115 SE2d 398). This court consistently has applied the rule that even though the findings of fact contended for by the (cross) appellant would have been authorized by the evidence presented on the trial, yet, where the facts found by the jury were authorized by the evidence, such findings will not be disturbed or set aside. *Williams v. Mathis,* 237 Ga. 305, 306 (227 SE2d 378). *Brook Forest Enterprises v. Paulding County,* 231 Ga. 695 (203 SE2d 860); *Balkcom v. Vickers,* 220 Ga. 345 (138 SE2d 868); *Thompson v. Hill,* 143 Ga. App. 272, 276 (238 SE2d 271). It follows that the trial court did not err in denying the motion for directed verdict nor the motion for judgment n. o. v. See *E-Z Go Car Div. of Textron v. Kuhlke Const. Co.,* 141 Ga. App. 711 (234 SE2d 339). The

judgment in the cross appeal is affirmed.

*Judgment reversed in Case No. 59075; affirmed in Case No. 59076. Deen, C. J., and Sognier, J., concur.*

ARGUED JANUARY 10, 1980 — DECIDED MARCH 5, 1980 —
REHEARING DENIED MARCH 20, 1980 IN CASE No. 59075 —

*G. Conley Ingram, Franklin R. Nix,* for appellant.
*G. Robert Howard,* for appellee.