### 65007. U. S. LIFE TITLE INSURANCE COMPANY OF DALLAS v. HUTSELL et al.

DEEN, Presiding Judge.

On January 25, 1974, appellee Hutsell purchased two adjacent tracts of property, pursuant to a contract of sale dated June 13, 1973. One tract was described as containing a house and 4.54 acres, and the other consisting of 1.58 acres more or less. Prior to the closing, the seller furnished appellee a survey plat completed on August 28, 1973, which indicated the two tracts had a combined area of 6.12 acres. In conjunction with the sale, the seller furnished appellee with a binder for a policy of title insurance issued by appellant on January 7, 1974. On Schedule C of the binder, which related the exclusion of certain risks detectable by an acceptable, certified survey, was a typed addendum reading "see attached plat and surveyor's report." On February 1, 1974, appellant's agent, James H. Bone, mailed to appellee the policy of title insurance, along with a letter in which he stated that "you will also note that the survey has been insured." The actual policy, however, contained an exclusion for "any discrepancies, conflicts in boundary lines, shortages in area,

encroachments, overlapping of improvements or other boundary or location disputes."

In the spring of 1978, appellee discovered that the combined acreage of the two tracts actually was less than four acres. Eventually appellee filed suit against appellant, seeking to recover under the title insurance policy or under the theory of fraudulent misrepresentation on appellant's part concerning insurance of the survey. Originally, the lower court granted summary judgment in favor of appellant, relying upon the policy exclusion for shortages in area and the fact that appellant's agent had no authority to amend the policy. Upon appeal, this court remanded, reversing on the ground that there was a question of fact as to whether appellant's agent did have authority to amend, and had amended, the policy as authorized signatory. *Hutsell v. U. S. Life Title Ins. Co.,* 157 Ga. App. 845 (278 SE2d 730) (1981).

The case proceeded to trial, during which appellee testified that during the negotiation of the purchase of the property he had insisted upon title insurance being furnished by the seller, and that he had requested and understood that the survey was also insured under the policy. Bone testified that his letter of February 1, 1974, to appellee had meant only that the survey was insured within the terms of the policy. Russell Butler, a real estate appraiser, testified that he had appraised the property about the time of the purchase, and that the fair market value attached then would have been less had he known of the correct acreage. The jury returned a verdict of $25,000 for appellee.

Appellant asserts three enumerations of error: (1) that the trial court erred in denying appellant's motion for directed verdict on the general grounds; (2) that the trial court erred in denying appellant's motion for directed verdict on the question of fraud; and (3) that the court erred in admitting the testimony of appellee's expert witness regarding the diminished value of the property over appellant's objection that such was purely speculative. *Held:*

1. Concerning the initial enumeration of error, appellant primarily argues that as a matter of fact and law title insurance does not and cannot undertake to cover such risks as in this case. For the following reasons, we disagree.

Code Ann. § 56-305 provides for five classes of insurance: (1) life, accident and sickness; (2) property, marine and transportation; (3) casualty; (4) surety; and (5) title. Code Ann. § 56-304 directs that "a title insurer shall be a stock insurer and shall not be authorized to transact any other class of insurance . . ." Title insurance is defined as "insurance of owners of real property or others having an interest therein, or liens or encumbrances thereon, against loss by encumbrance, or defective titles, or invalidity, or adverse claim to

title, or unmarketability of title by reason of encumbrance or defects not excepted in the insurance contract . . ." Code Ann. § 56-410.

Appellant emphasizes that the quality of appellee's title in the property purchase has not been affected, and the quantity disturbed only by the discovery that appellee had actually not purchased as much property as indicated on the defective survey. It further contends that the problem here could not be characterized as a defect or encumbrance of title, but rather one of casualty and therefore outside the class of coverage authorized for title insurance.

Certainly the statutory definition does not obviously contemplate survey defects as a risk covered. Generally, "the liability of an insurer under a title insurance policy is for loss or damage by reason of defects in the title to the property or by reason of liens or encumbrances thereon . . . The coverage of title insurance extends to reasonably anticipated implications of ownership which attach to the insured by reason of the record, but does not extend beyond that point." 44 AmJur2d, Insurance, § 1450. It appears, however, that as yet it has not been questioned whether insuring against survey defects, such as the shortage of area in this case, lies beyond the authorized scope of title insurance. Indeed, the question was not considered in this case's previous appearance before this court.

This court here concludes that defects of survey such as the shortage of area in this case may be sufficiently related to the standard notions of title defect or encumbrance as to be a risk allowed coverage by title insurance. We are persuaded to find such, in part, because of the apparently standard practice of title insurance companies specifically excluding defects detectable by an acceptable survey.

The exclusion contained in the binder and policy issued by appellant, excepting coverage for various problems detectable by a correct survey but also providing that the exclusion could be deleted upon acceptance by the company of a satisfactory survey plat, appears to be standard with title insurance policies. See Johnstone, "Title Insurance," 66 Yale LJ 492 (1954); Waterview Assoc. v. Lawyers' Title Ins. Corp., 30 Mich. App. 687 (186 NW2d 803) (1971); Mims v. Louisville Title Ins. Co., 358 S2d 1028 (1978); Marandino v. Lawyers' Title Ins. Corp., 156 Va. 696 (159 SE 181); MacBean v. St. Paul Title Ins. Corp., 169 N. J. Super. 502 (405 A2d 405) (1979). The above cases involved exclusion clauses practically identical to the one in the present policy, and none of the courts entertained any fears that the insurer could not, in effect, insure against inaccurate surveys where the standard exclusion was deleted because of the insurer's acceptance of a survey plat.

We find MacBean v. St. Paul Title Ins. Corp., supra, per-

suasively analogous. There, a certified survey indicating that the insured's property abutted a public road was accepted by the insurer, and the standard exclusion was deleted. Subsequently, the insured discovered that the road was privately owned. The court held that under the circumstances the extent to which the survey was insured was ambiguous, and that the "availability of coverage is thus to be determined by the trier of fact applying the reasonable expectation doctrine." MacBean v. St. Paul Title Ins. Corp., supra, at 408.

Similarly, in this case where the policy binder referred to the survey plat and the cover letter received with the policy indicated that the survey had been insured, there was the question for the trier of fact of whether a reasonable insured could reasonably expect that the policy coverage extended to survey defects included mathematical shortage of area. The trial court thus properly denied appellant's motion for directed verdict.

Appellant further asserts that directed verdict was proper because the title insurance policy clearly excluded shortages of area and the policy could not be amended by the letter from the issuing agent. As noted above, however, that issue has previously been decided against appellant by this court. Hutsell v. U. S. Life Title Ins. Co., supra.

Appellant contends that the evidence failed to show, as a matter of fact and law, no recoverable damages for appellee, primarily relying upon Code Ann. § 29-201 and Kendall v. Wells, 126 Ga. 343 (55 SE 41) (1906). Appellant further asserts that appellee's only damage was speculative, with regard to the aborted property development, emphasizing that under Code Ann. § 20-1406 "remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, or unless they are capable of exact computation."

We believe appellant's reliance upon the above authority to be misplaced. Code Ann. § 29-201 and Kendall v. Wells, supra, concerns the rights and liabilities between a vendor and vendee of property. In the instant case, the rights of the insured against the insurer under the title insurer policy are not necessarily derivative of any possible cause of action against the vendor of the property. As correctly charged by the trial court, "the measure of damage for a breach by an insurer under a policy insuring the title against encumbrances or encroachments is the difference between the value of the property when purchased with the encumbrance or encroachment thereon, and the value of the property as it would have been if there had been no such encumbrance or encroachment." Beaullieu v. Atlanta Title &c. Co., 60 Ga. App. 400, 402 (4 SE2d 78) (1939). We believe that measure of damage is applicable here. Appellant's argument

regarding disallowance of any remote or consequential damages overlooks the fact that evidence was given of the appraised value of the property at the time of the purchase, considering the diminished quantity of the land. It further appears from the record that appellee actually was not seeking damages for the lost business opportunity, and the trial court properly charged the jury about such remote or consequential damages.

2. Concerning appellant's assertion that there was no evidence to support a finding of fraud and therefore the trial court erred in failing to direct a verdict for appellant on the question of fraud, we believe the question was properly submitted to the jury. Direction of a verdict is proper where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict . . ." Code Ann. § 81A-150 (a). If the evidence strongly supports but does not demand a particular finding, directed verdict is unwarranted. *Life Ins. Co. of Ga. v. Dodgen,* 148 Ga. App. 725 (252 SE2d 629) (1979); *E-Z Go Car Div. of Textron v. Kuhlke Const. Co.,* 141 Ga. App. 711 (234 SE2d 339) (1977).

" 'The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff.' " *Romedy v. Willett Lincoln-Mercury,* 136 Ga. App. 67 (220 SE2d 74) (1975). To prevail against a motion for directed verdict on the question of fraud, appellee had to provide evidence of each of the above elements. The record indicates that appellee met that burden. The pertinent representation was appellant's indication that the survey was insured. The element of scienter involved appellant's knowledge of the coverage exclusion in the policy, rather than its knowledge of any survey inaccuracy. Appellee testified, and the exhibits of record corroborate, that during the negotiation of the purchase of the property he had requested title insurance which covered the survey; prior to the closing, an interim policy binder was issued, on which there was reference to the survey and some ambiguity as to the deletion of an exclusion for defects detectable by an acceptable survey. There was testimony as to the fair market value of the property at the time of its purchase, had the actual acreage been known. In short, sufficient evidence was presented relative to each element to require jury resolution.

3. Appellant's third enumeration of error is without merit. Appellee's expert witness testified that he had appraised part of the property about the time of the purchase, and then testified as to his opinion of the lesser value he would have attributed had he known of

the shortage in acreage. We fail to see how such testimony is so speculative as to be inadmissible. It is by now axiomatic that value may be proved by opinionative evidence. *Gulf Refining Co. v. Smith,* 164 Ga. 811 (139 SE 716) (1927). The trial court properly admitted the testimony.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 29, 1982 —
REHEARING DENIED NOVEMBER 18, 1982 — 

*Reuben M. Word, Marion Smith II,* for appellant.
*Asa Mitchell Powell, Jr., Harold E. Gill, Jr.,* for appellees.