[No. B020101. Second Dist., Div. Seven. May 24, 1988.]

KEITH O. JOHNSON, Plaintiff and Appellant, v.
HABERMAN & KASSOY et al., Defendants and Respondents.

**COUNSEL**

Houck, Balisok & Harowitz and Russell S. Balisok for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, David E. Reynolds and Natalie C. Zionitz for Defendants and Respondents.

OPINION

**THOMPSON, J.**—Plaintiff appeals from the entry of summary judgment in favor of defendant attorneys in his action for attorney malpractice. The summary judgment was granted on the sole ground that the action was barred by the statute of limitations. For the reasons that follow, we will reverse.

## Factual Background

In 1971 plaintiff became a limited partner in a limited partnership, 954 North Palm Avenue (954), which owned an apartment building. There was a triple net master lease which, unknown to plaintiff, allocated to 954, the lessor, a monthly lease payment roughly equal to debt service expense; the lessee (Palm Leaseco whose general partners were the same as the 954 general partners) was obligated to pay expenses. Despite this, the general partners called upon plaintiff, for example, to come up with more money or reduce his interest. In 1974 plaintiff was "on notice" of alleged fraud and misappropriation of money of the general partners and wrote letters to them in which he referred to possible "fraudulent" activity and the payout of the lessee "Palm Leaseco" investors.

In November 1974, plaintiff first consulted defendant attorneys for the purpose of securing their legal services regarding his investment in the partnership. At that time or soon thereafter, he hired defendant attorneys to investigate, advise and protect his interests in the partnership, indicating, inter alia, that "the management was poor and [he] needed help and whatever was necessary" and turning over all of his papers regarding the partnership.

On April 3, 1975, defendants wrote a letter on plaintiff's behalf to the general partners. On May 29, 1975, plaintiff executed a power of attorney to defendants to represent his interest in 954. Nonetheless, during May 1975, without his knowledge or consent, defendant attorneys undertook to represent the general partners and were hired on as their counsel.

In October 1975, on defendants' recommendation plaintiff sold out his interest at about 10 percent of his investment. The plaintiff thought defendants were representing his interest and did not know that defendant Haberman represented the general partners. The draft by defendants preserved the right to an accounting and the right to pursue any claims plaintiff had at that time against the partnership or general partners. After one of the defendant attorneys had brought to plaintiff's attention that he was having difficulty obtaining a complete set of financial records of the partnership, plaintiff had insisted that the buyout agreement contain language preserving

his right to an accounting. Defendants had been in possession of a copy of the triple net master lease for at least three months before the buyout, but never indicated that the general partners were doing anything improper or that there were unresolved issues pertaining to, for example, the buyout of Palm Leaseco, or the general partner.

In October 1975, about the same time, another limited partner who had not accepted the buyout filed a lawsuit (*Williams* I) against the partnership, plaintiff and others. Although plaintiff apparently was never served with a summons and complaint, the motion for appointment of a receiver with attached declaration was served on plaintiff. Plaintiff did not contact defendant attorneys, but they nonetheless knew about it because they were served on behalf of the partnership.

In 1981, plaintiff first learned from an attorney representing Williams (who is now also representing plaintiff), that defendant attorneys had been representing the general partners before he signed the buyout agreement in October upon their recommendation; about the concept of a partner's fiduciary duty and the terms, description and duties arising from the master lease, including that his partnership interest should not have been taxed for building operating losses; and that the law afforded him the right to regain his investment or recover damages through civil litigation.

Plaintiff then filed this suit herein against the attorneys in June 1981. In his first amended complaint, containing causes of action for negligence and constructive fraud, plaintiff alleged that around April 1975, he employed defendant attorneys to represent him with respect to his interest in 954. He also alleged that defendants breached their respective duties of care as well as good faith and fair dealing by (a) negligently failing to discover and advise plaintiff of the existence of certain rights of action he had against the general partners and (b) knowingly and willfully failing to diligently and faithfully investigate the general partner's conduct and to inform plaintiff of his rights of action. He further alleged that: defendants acted with the intent to promote a new relationship and become, as they did, attorneys for the partnership and its general partners; as a result, plaintiff was induced to sell his interest for less than its true value and failed to take formal legal action against the general partners; and plaintiff did not become aware of the existence of facts upon which his action is based, nor of his right of action, until April 1981 when his present attorney of record informed him.

Plaintiff also then cross-complained in an existing *Williams* lawsuit (*Williams* II) for fraud against the general partners. The general partners were granted summary judgment on the ground the three-year fraud statute of limitations had run. The summary judgment against both plaintiff and

Williams was affirmed on appeal. The appellate court ruled that "as early as 1974 both . . . were aware of enough of the conduct now complained of to put a reasonable investor on notice of the alleged fraud and misappropriation of money" but "[e]xcept for protests by their lawyers, neither took any action until . . . a period beyond the applicable [fraud] statute of limitations." Plaintiff had, inter alia, raised an issue regarding the triple net master lease but the general partners had argued that knowledge of the terms and meaning of the master lease should be imputed to plaintiff because defendant attorneys who represented plaintiff in 1975 had a copy of the lease in their possession.

Defendants' motion for summary judgment in the case herein was granted on the ground that the action was barred by the attorney malpractice statute of limitations. This appeal followed.

### Discussion

Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc. § 437c; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) ■ "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution." (*Ibid.*) The moving party bears the burden of furnishing supporting documents that establish the claims of the adverse party are entirely without merit on any legal theory. (*Ibid.*; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The affidavits of the party opposing the motion should be broadly construed while those of the moving party are narrowly construed and any question as to the propriety of the summary judgment should be resolved against granting the motion. (*Mann, supra*; *Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 594 [184 Cal.Rptr. 98].)[1]

The summary judgment motion was made and granted on the sole ground that it was barred by the statute of limitations. Code of Civil Procedure section 340.6, the relevant statute of limitations for attorney malpractice, provides that such action shall be brought "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no

---

[1] This rule is modified where the opposing party seeks to create triable issues by repudiating his own earlier admissions. (See *Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 849 [236 Cal.Rptr. 696].) But defendants have not pointed to any evidence in the record that, contrary to plaintiff's declaration, establishes that he earlier knew of the terms of the master lease or gave his consent to dual representation.

event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that . . . [¶](1) The plaintiff has not sustained actual injury; [or] [¶](2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ."

■ Initially we note that the four-year limitation period of the statute does not bar plaintiff's action because the complaint was filed less than four years after the effective date of section 340.6. (*Baright* v. *Willis* (1984) 151 Cal.App.3d 303, 309 [198 Cal.Rptr. 510]; *Krusesky* v. *Baugh* (1982) 138 Cal.App.3d 562, 565-566 [188 Cal.Rptr. 57]; see also *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 437 [186 Cal.Rptr. 228, 651 P.2d 815].) The issue, therefore, is whether plaintiff's action is barred by the one-year statute of limitations after discovery.

We first consider the tolling provisions of the statute which apply to the one-year, as well as the four-year, provision. (*Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 336 [187 Cal.Rptr. 14].) ■ Even if a client knows his lawyer improperly handled the case, the statute of limitations does not begin to run until the client sustains actual, appreciable harm and the lawyer's negligence which caused the harm becomes irremediable. (*Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66, 72-73 [240 Cal.Rptr. 423].) ■ Here, however, plaintiff admittedly was damaged irremediably by October 1978 when, by even the most liberal calculation, any action against his former general partners for fraud was barred by the three-year fraud statute of limitations.

The one-year statute is also tolled so long as the attorney continues to represent the plaintiff with respect to the specific subject matter in which the alleged wrongful act or omission occurred. Plaintiff contends that the attorney-client relationship was never terminated or repudiated. There clearly was no proper, formal withdrawal here. It is a disputed question of fact as to whether defendants ever communicated their intention to terminate the relationship.[2]

We recognize that the issue of tolling because of continued representation is not just answered by whether there has been a proper, formal withdrawal.

---

[2] While defendant Attorney Klein testified in his deposition that he "believe[d]" he orally discussed with plaintiff the matter of shifting the attorneys' representation from plaintiff to the partnership, plaintiff in his declaration denied being so informed. Plaintiff claimed he was never told orally or in writing, that the attorneys were withdrawing from his representation or representing the general partners. A billing notice sent plaintiff July 31, 1975, did contain a reference indicating it was for services "prior to being hired as partnership counsel" but did not unequivocally state attorneys' representation of plaintiff had ceased.

Failure to formally withdraw as counsel "standing alone" does not constitute continued representation for purposes of tolling section 340.6. (*Shapero v. Fliegel, supra,* 191 Cal.App.3d 842, 849; *Gurkewitz* v. *Haberman, supra,* 137 Cal.App.3d at pp. 332-333.)

Here, however, plaintiff has not just alleged the failure to formally terminate the attorney-client relationship but also attorney conduct violating the Rules of Professional Conduct. (See Rules Prof. Conduct, rule 5-102.) The defendants' conduct herein was egregious. ■ The fiduciary relationship makes it improper for an attorney to act contrary to, or assume a position inconsistent with, the interests of his present or former client. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 103, p. 122.) Moreover, an attorney cannot accept employment or otherwise act adversely to his former client on a matter of controversy in which he formerly represented the client. (*Id.,* § 121 at p. 141.) An attorney's simultaneous representation of clients with differing interests poses the classic conflict situation. A client is entitled to his attorney's unimpaired loyalty and the danger is that an attorney representing conflicting or potentially conflicting interests will be tempted to favor one client over the other. (*Id.,* § 108 at p. 127.)

■ Defendant attorneys had placed themselves in a classic conflict-of-interest situation. They were already representing plaintiff when they undertook to represent the general partners whom they were supposed to investigate. The record does not show they ever obtained a waiver from their original client. They certainly should have made a formal written withdrawal as well as obtained a written consent from plaintiff before engaging in their admitted representation of the general partners. (See Witkin, *supra,* §§ 103, 108, pp. 122-123, 127-128; *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1143 [217 Cal.Rptr. 89]). Their action precluded them from filing suit on behalf of plaintiff even if he had asked. Instead, they recommended he sell out to the general partners. Under these particular circumstances, where attorneys violate the rules governing representation of adverse parties by undertaking to represent the very parties they were supposed to investigate without obtaining any waiver from their original client and without any formal termination of the relationship, they should be estopped from claiming that their representation of the original client did not continue.

In any event, the one-year statute of limitations is tolled until the date plaintiff discovered or should have discovered his cause of action for malpractice against the attorneys. The trial court ruled that, as a matter of law, plaintiff knew or should have known of the fraud in 1974 and he knew or should have known that he was a victim of malpractice in 1975. We disagree.

■ The question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is ordinarily a question of fact. It is only where reasonable minds can draw but one conclusion from the evidence, that it becomes a matter of law. (*Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 436, *Baright* v. *Willis, supra,* 151 Cal.App.3d at p. 311.) ■ A legal malpractice action ordinarily does not accrue at the moment the lawyer errs. (*Bledstein* v. *Superior Court* (1984) 162 Cal.App.3d 152, 171 [208 Cal.Rptr. 428].) Where, as here, there is a professional relationship, the degree of diligence in ferreting out the negligence for the purpose of the statue of limitations is diminished. (*Baright* v. *Willis, supra.*) A client damaged in the context of an attorney-client relationship is under no duty to investigate his attorneys' actions unless he has actual notice of facts sufficient to arouse the suspicions of a reasonable person. (*Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at pp. 567-568.)

■ The crucial time is not when plaintiff discovered, or should have discovered, his partners' alleged fraud and misappropriation of money but only when he discovered or should have discovered that his lawyers acted negligently. Plaintiff's being on notice of the general underlying misconduct of the general partners in the partnership is not the equivalent of being on notice of the attorneys' malpractice in failing to properly advise, inform, or otherwise protect his interests with regard to the general partners and the partnership.[3] Once plaintiff was on notice in 1974 of his partners' misconduct, he acted diligently. He sought professional help. Plaintiff hired the lawyers to represent him because he suspected his partners were defrauding him. Once they undertook to represent him, he was entitled to rely on their recommendations as licensed professionals and to assume they were acting solely in his best interest. To conclude as a matter of law that plaintiff acted unreasonably in relying upon defendant attorneys' recommendation to sell and in not seeking out another attorney to reinvestigate the matter and file suit would in effect require a client to consult a second lawyer in every case for another opinion. (*Krusesky* v. *Baugh, supra,* 138 Cal.App.3d at p. 568.)

■ It is, of course, true that the statute of limitations is not tolled by the belated discovery of legal theories, as distinguished from the belated discovery of facts. (*McGee* v. *Weinberg* (1979) 97 Cal.App.3d 798, 803 [159 Cal.Rptr. 86].) ■ Here, however, plaintiff basically claims belated discovery of facts in April 1981 regarding the terms and significance of the

---

[3] Defendants' reliance on *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886] is misplaced. *Gutierrez* supports the distinction between notice of the partners' misconduct and of the misconduct of the attorneys that a suspicious plaintiff consulted. It expressly adhered to the policy of "barring the stale claim against the original tortfeasor but allowing the plaintiff to sue the attorney whose bad advice caused the delay" in filing suit which led to the loss of the underlying cause of action. (*Id.* at p. 900, fn. 2.)

triple net master lease in defendants' possession and defendants' representation of the adverse interests of the general partners without his knowledge or consent.

We cannot say, as a matter of law, on this record that defendant attorneys' failure to disclose, discern, or advise plaintiff regarding the terms and meaning of the triple net master lease and its implications for plaintiff's rights of action against the 954 general partners was immaterial. ▮ The dealings between an attorney and his client frame a fiduciary relationship of the very highest character which carries with it the duty to communicate whatever information the attorney acquires with respect to the subject-matter involved in the transaction. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 189-190 [98 Cal.Rptr. 837, 491 P.2d 421].)

While the plaintiff's 1974 letters to the general partner shows he knew of the existence of an underlying lessee, Palm Leaseco, there is no evidence in the record that he knew of the critical terms of the triple net master lease. Although the record shows that the defendant attorneys had a copy of this master lease before the buyout, it does not show plaintiff had received a copy. The underlying fraud suit against the general partners did not determine this issue since, as the general partners argued, defendant attorneys' knowledge and negligence would be imputed to plaintiff. (*See Gutierrez* v. *Mofid, supra,* 39 Cal.3d 892, 901.) Williams's motion for a receiver that plaintiff received in October 1975 did not refer to a triple net lease. Moreover, even assuming plaintiff subsequently received a copy of the master lease agreement among the documents sent to him after the buyout agreement was signed, it is a factual question whether a reasonable, unsophisticated layman, such as plaintiff, would understand the meaning or significance of the terms contained in a provision of this 25-page document and, thereby recognize that the attorneys erred by recommending he sell, rather than sue the general partners.

The corollary to defendant attorneys' expertise is the inability of the layman to detect misapplication. (*Neel, supra,* 6 Cal.3d at p. 188.) ▮ Discovery occurs only when the layman plaintiff knows or should know all material facts essential to show the elements of the cause of action of malpractice. (*Id.* at p. 190.)

Plaintiff properly points out his belated discovery was due to the fact that he believed defendant attorneys were representing him and protecting his interests. Plaintiff relied on their recommendation to sell at 10 percent of his investment price. He did not know that they had in fact undertaken to represent the general partners prior to the buyout agreement.

 We certainly cannot say as a matter of law that the circumstances known to plaintiff would have roused the suspicions of a reasonable, unsophisticated layman and caused him to investigate what his attorneys did. Defendant attorneys in effect seek to take advantage of their own wrongdoing in apparently proceeding to obtain more lucrative employment by the general partners whose interests were adverse to their client. Defendant attorneys should be precluded from exploiting their violations of professional rules governing representation to now argue that plaintiff should have realized they were representing the general partners' interest and not his.

Accordingly, plaintiff neither discovered nor should have discovered the attorneys' wrongdoing until April 1981. He timely filed a complaint in June 1981. The trial court, therefore, erred in granting summary judgment and we will reverse the judgment.

## DISPOSITION

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed herein. Defendants are to pay costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 17, 1988.