**William H. BRECK, Appellant,**

v.

**Frank H. MOORE and Sandra Moore, Appellees.**

**Frank H. MOORE and Sandra Moore, Cross–Appellants,**

v.

**William H. BRECK and Safeco Title Agency, Inc., Cross–Appellees.**

Nos. S–5435, S–5445.

Supreme Court of Alaska.

Feb. 2, 1996.

---

William H. Breck, pro se, Vallejo, California.

Gregory L. Youngmun and John T. Robertson, Staley, DeLisio & Cook, Anchorage, for Appellees/Cross–Appellants.

Michael G. Mitchell and Frederick H. Boness, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, for Cross–Appellee Safeco Title Agency, Inc.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. pro tem.*

## OPINION

COMPTON, Justice.

Frank Moore and Sandra Moore sued William H. Breck, an attorney, and Safeco Title Agency, Inc. (Safeco) for failing to adequately warn them of building and sewage disposal restrictions on land they eventually purchased. They filed suit promptly after discovery of the restrictions, but many years after closing. The trial court granted summary judgment for Safeco, based on the statute of limitations. After a bench trial, the court granted judgment in favor of the Moores against Breck, but awarded only partial damages and no attorney's fees or costs

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

against Breck. Breck appeals the determination of liability. The Moores appeal the judgment for Safeco and the limited award of damages. We affirm the judgment for Safeco and the determination that Breck was liable to the Moores, but remand for a redetermination of damages against Breck.

## I. FACTS AND PROCEEDINGS

### A. Factual History

Breck represented the Moores in a number of legal matters prior to 1981, including the incorporation of Frank Moore's medical practice and the lease of the Moores' Anchorage home. In the summer of 1981, the Moores, with the assistance of various real estate agents, decided to purchase a duplex in Eagle River owned by Robert and Bonnie Krall. The Moores retained Breck, requesting that he assist them in closing the transaction. They employed Safeco and Alaska Title Guaranty (ATG) to provide title insurance.

On November 9, 1981, ATG sent a letter to Breck requesting that he prepare the warranty deed and deed of trust package needed for a closing scheduled for the following day. The letter included a "Preliminary Commitment for Title Insurance" from Safeco, which stated that the Kralls had fee simple title, subject to restrictions "as recited in the script of the plat of LAKE RIDGE TERRACE SUBD., substantially as hereto attached." However, the plat was not attached to the letter. Breck completed the documents and sent them to Safeco. He never asked for or obtained a copy of the plat. He never advised the Moores that there might be significant title restrictions on the property.[1] The plat contained the following restrictions:

1. The subdivision at the time of filing is not served by public water and sewer facilities. No onsite water and/or sewage disposal facilities may be constructed [without] prior approval of the Health Department.

2. No dwelling shall be constructed or placed upon this lot.

On November 10 the Moores closed the transaction. Although the deed of trust also refers to the plat, the plat was not attached to it at the time of closing. Breck did not attend the closing.

The Moores moved into the duplex shortly after closing. Three to four weeks later, the Moores received a complete title insurance policy from Safeco. The plat, which contained the sewer and building restrictions, was attached to the policy. Frank Moore placed the policy in his files without reading it. Sandra Moore never saw the policy. The Moores moved out in early 1983 because of extensive problems with the septic system and resulting water damage.

### B. Procedural History

In October 1987 the Moores filed suit against the Kralls and the real estate agents involved in the transaction, alleging misrepresentation relating to the septic system. In September 1989 the Moores' attorney in the suit against the Kralls discovered the plat restrictions. In August 1990 the Moores amended their complaint to add Breck and Safeco, alleging breach of contract and negligence for failing to warn of the restrictions. The Moores settled with the Kralls[2] and agreed to dismiss the claims against the real estate agents. In February of 1992 Safeco moved for summary judgment, which the Moores opposed. Breck answered the Moores' complaint against him, alleging in part that he was working for Safeco, not the

---

**1.** At trial Breck testified that he asked an ATG representative about the absence of the plat, and that he met with the Moores and advised them not to proceed without knowing the restrictions. The Moores testified to the contrary. The trial court believed the Moores, based in part on the fact that Breck's correspondence during the pretrial negotiations never mentions this exculpatory meeting.

**2.** Under the settlement reached August 31, 1992, the Kralls agreed to take the duplex back, assume the mortgage, and cancel the second note, attempt to clear the title, and actively market the property. Any proceeds from the sale are to be used to pay off the mortgage. Any remaining money, up to $25,000, will go to the Moores. After $25,000, the parties will split the money. The parties indicated that the property will have to sell for $105,000 for the Moores to receive the initial $25,000.

Moores, in preparing the deeds. The trial court granted summary judgment for Safeco, based on the statute of limitations.

> [The Moores] were on inquiry notice and reasonably should have known of the existence of the plat restriction from the time the preliminary commitment referencing that restriction was furnished to [the Moores] and their attorney. The court finds that there is no genuine issue of material fact in this regard. This notice was sufficient to commence the running of the statute of limitations for the tort causes of action. The six year statute of limitations for the contract cause of action began to run upon issuance of the preliminary commitment as well, since that is when the "breach" is alleged to have occurred.

Safeco was awarded attorney's fees and costs against the Moores in the amount of $14,910.71.

After a bench trial, the court entered findings of fact and conclusions of law holding that the statute of limitations did not require dismissal of the suit against Breck. Regarding tolling of the statute of limitations under the discovery rule, the court stated:

> The court finds as a factual matter that Dr. Moore acted reasonably in not reading the policy. The policy arrived after the transaction was closed; Dr. Moore's testimony regarding his reliance on professionals in the field was credible and reasonable. There was no evidence to suggest that a reasonable person in Dr. Moore's circumstances would have read the policy.

The court limited the Moores' damages to closing costs, and ordered each party to bear their own litigation costs and attorney's fees.

## II. DISCUSSION

### A. The Nature of the Professional Malpractice Action

 An action against a real estate attorney and a title agency for negligent title research and disclosure is a professional negligence or malpractice action. A professional malpractice action involves "a professional's alleged breach of a duty of due care which was implied by law as a result of a contractual undertaking." *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 853 (Alaska 1991). Like other professionals, real estate attorneys and title agencies must use due care to discover and disclose to their clients significant restrictions on real title. *See Bank of California v. First Am. Title Ins. Co.*, 826 P.2d 1126, 1129 (Alaska 1992). The hybrid nature of a professional malpractice action has led to some confusion about whether common law contract or tort rules apply. This case raises questions about the statute of limitations, the discovery rule, and the measure of damages. We address all three questions at the outset.

 First, the statute of limitations on the claims in this case is six years. AS 09.10.050. In *Van Horn Lodge, Inc. v. White*, 627 P.2d 641, 643 (Alaska 1981), we held that the limitation period depends on whether the gravamen of the plaintiff's complaint lies in contract or tort. Application of this analysis proved difficult over the next decade. *See Jones v. Wadsworth*, 791 P.2d 1013, 1016–17 (Alaska 1990); *Bibo v. Jeffrey's Restaurant*, 770 P.2d 290 (Alaska 1989). We have recently modified the *Van Horn* 'gravamen' analysis. Rather than attempting to characterize the source of the plaintiff's rights in terms of the common law distinctions between tort and contract, we now look to the nature of the injury. The six-year statute of limitations generally applies to professional malpractice actions claiming economic loss. *Lee Houston*, 806 P.2d at 855. The two-year statute of limitations applies to malpractice causing personal or reputational injury. *Pedersen v. Flannery*, 863 P.2d 856, 858 (Alaska 1993); AS 09.10.070. Because the Moores have suffered principally economic injuries, the six-year statute of limitations applies.

 Second, the discovery rule applies to the claims in this case. We have consistently held that the discovery rule applies to professional malpractice. *Lee Houston*, 806 P.2d at 851 (malpractice by real estate agents); *Gudenau & Co. v. Sweeney Ins. Inc.*, 736 P.2d 763, 766 (Alaska 1987) (malpractice by insurance agents); *Sharrow v. Archer*, 658 P.2d 1331, 1334 (Alaska 1983) (malpractice by phy-

sician); *Greater Area Inc. v. Bookman,* 657 P.2d 828, 829–30 (Alaska 1982) (malpractice by attorney). This is true even in professional malpractice actions where the contract elements of the action appear to predominate over the tort elements. *See Gudenau,* 736 P.2d at 766 n. 4, 767. The discovery rule has been applied to actions relating to title research in other jurisdictions by decision and by statute. *See Zurick v. First Am. Title Ins. Co.,* 833 F.2d 233 (10th Cir.1987) (applying Colorado law); *Pioneer Nat'l Ins. Co. v. Sabo,* 382 A.2d 265 (Del.Super.1978); Cal. Civ.Proc.Code § 339(1) (West 1982). As in other malpractice actions, the fact of negligent title research and the resulting harm are difficult for a lay person to discover. *See Bookman,* 657 P.2d at 830. Nevertheless, Safeco characterizes the claim against it as a contract action and argues that the discovery rule should not apply. We recently held that the discovery rule does apply to some contract actions. *Bauman v. Day,* 892 P.2d 817, 828 (Alaska 1995). Even were that not so, we reaffirm the principle that the discovery rule applies to professional malpractice actions.

■ Third, the tort measure of damages applies to this case.

Like those of any other action for negligence, the elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Linck v. Barokas & Martin,* 667 P.2d 171, 174 n. 4 (Alaska 1983).

Because the Moores sued for malpractice under both contract and tort theories, the trial court analyzed damages under both contract and tort measures. While the professional services contract gives rise to the duty of due care, the professional's negligence gives rise to the damage. The damage generally should be measured according to traditional tort principles.[3]

### B. *The Trial Court Correctly Applied the Discovery Rule*

As discussed, the Moores were required to bring suit within six years of the time they knew or reasonably should have known of all the elements of their cause of action.[4] *Lee Houston,* 806 P.2d at 855; *Bookman,* 657 P.2d at 829. The trial court held that the Moores had notice of the claims against Safeco in 1981 as a matter of law, but that the Moores did not have notice of the claims against Breck until 1989. The Moores amended their complaint to add Safeco and Breck in 1990. Because both claims arise from the same set of facts, these holdings present an apparent conflict on the date of discovery. The conflict is more apparent than real. What a plaintiff should have known about her cause of action depends upon all of the surrounding circumstances.

#### 1. *Moore v. Safeco*

■ In suits against third parties, "the plaintiff is generally charged with the lapses of attorneys acting in his behalf." *Pedersen v. Zielski,* 822 P.2d 903, 907 n. 5 (Alaska 1991) (*quoting Gutierrez v. Mofid,* 39 Cal.3d

---

**3.** In *Lee Houston,* we stated in dicta that "[w]hile there is not a simple tort-contract dichotomy determining the applicable statute of limitations, there is for determining whether punitive damages are recoverable." *Lee Houston,* 806 P.2d at 856. This suggests that the *Van Horn* "gravamen" analysis may have new life in the field of malpractice damages. We express no view as to whether a peculiar factual situation may make a contract measure of damages appropriate.

**4.** This is the simplest formulation of the discovery rule. When a plaintiff knows that she has been harmed but has difficulty determining the

cause of the harm, the discovery rule is complicated by consideration of the date plaintiff received inquiry notice and the reasonableness of the plaintiff's investigation. *Pedersen v. Zielski,* 822 P.2d 903, 908 (Alaska 1991) These concepts do not apply to this case. Once the Moores knew or should have known that the duplex they purchased had significant building and sewer restrictions, they knew or should have known that they had a potential suit against the title agency or title researcher. They had 'discovered' their cause of action. The date of inquiry notice is the date of discovery for all practical purposes.

892, 218 Cal.Rptr. 313, 323, 705 P.2d 886, 896 (1985)). If Breck should have discovered the Moores' cause of action against Safeco in 1981, then the Moores are charged with this constructive discovery. The trial court properly distinguished between what Breck reasonably should have known and what the Moores reasonably should have known. Breck was retained as an attorney with expertise in real estate law. One of his principal duties in the transaction was to confirm that the seller's title was free of significant restrictions. He received the preliminary commitment referencing restrictions in an unattached plat. As Breck testified at trial, one of the primary purposes of a preliminary commitment letter is to allow the purchaser's title agent to examine and evaluate significant title restrictions. "The date of discovery is a question of fact which cannot ordinarily be determined by the superior court on a motion for summary judgment." *Gudenau*, 736 P.2d at 767. Nevertheless, we conclude that the notice to Breck was sufficient as a matter of law. This notice is charged to the Moores in their suit against Safeco.

 The Moores assert that there is a genuine issue of fact about Breck's role in the purchase. In his answer, Breck asserted that he worked for Safeco, not the Moores.[5] The Moores interpret this to mean that Breck "switched his allegiance" at some point in the transaction and that Breck was no longer the Moores' agent at closing for purposes of the discovery rule. If Breck was not the Moores' agent, then the Moores would not be charged with Breck's negligence. We conclude that the Moores' argument mischaracterizes Breck's statements. Breck was attempting to recast the legal relationships in order to shift responsibility to Safeco. He does not contend that he *changed* allegiance from one master to the other. Rather, he asks that the court view

the *entire* transaction through a different legal prism. The trial court properly rejected Breck's argument. Breck was the Moores' attorney at all relevant times. The fact that he exchanged documents with the title insurer and that his fee was channelled through the title insurer does not change his relationship to the Moores. In their complaint against both Safeco and Breck, the Moores asserted that Breck was their attorney at the time of closing. In the trial against Breck, the Moores *proved* that Breck was their attorney at the time of closing. There was no genuine issue of material fact precluding the court from granting summary judgment for Safeco.

### 2. *Moore v. Breck*

 In their suit against Breck, the Moores are responsible only for their own knowledge and lack of diligence. Breck argues that because Dr. Moore is educated and speaks English, the receipt of the closing documents in 1981 put him on notice of the restrictions. The discovery rule takes into account the sophistication of the plaintiff in the particular area of knowledge. *See Pedersen*, 822 P.2d at 907 (medical terminology); *Johnson v. Haberman & Kassoy*, 201 Cal. App.3d 1468, 247 Cal.Rptr. 614, 619 (1988) (complicated lease); *Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 116–17 & n. 6 (D.Conn.1978) (sophisticated investor). In *Gudenau*, we held that it might be reasonable for an insured to rely on an insurance broker's statements about the scope of coverage, rather than reading and interpreting the detailed language of the exclusionary clauses. 736 P.2d at 767. This court reviews the underlying factual determinations for clear error, but does not defer to the trial court's application of the legal doctrine of reasonableness to the established facts. Alaska

5. In his answer, Breck claims that he only represented the Moores on tax matters and was exclusively Safeco's agent in the real estate transaction. In his cross-claims against Safeco, Breck states:

SAFECO acting through its agents and/or employees to [sic] retained, requested, authorized and directed [Breck] to prepare a Deed of conveyance ... which Deed of conveyance was prepared and delivered to the offices, agents and employees of SAFECO, from BRECK's office in accordance with the directions and instructions received from SAFECO; and that no retainer, request, authorization or direction was received from any other party.

SAFECO was acting as the "PRINCIPAL", and BRECK was acting as the "AGENT" of SAFECO, with regard to the preparation and delivery of the aforesaid Deed of conveyance.

R.Civ.P. 52(a); *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1223 (Alaska 1992). The trial court found that Dr. Moore acted reasonably in relying on Breck and the real estate agents to review the documents and identify problems. We agree.

### C. *The Trial Court Erred in Limiting the Moores' Damages to Closing Costs*

 This court reviews an award of damages for an abuse of discretion and independently reviews the law applied by the trial court. *Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896, 910 (Alaska 1991). The Moores moved into the duplex in late 1981, moved out because of the septic problems in early 1983, and were relieved of their obligations to make mortgage payments by settlement with the Kralls in late 1992. They seek all out-of-pocket expenses.[6] The trial court awarded only closing costs. Additionally, because the trial court found the amount recovered by the Moores was negligible "in relation to the amount sought in the litigation," it held that there was not a prevailing party for the purpose of attorney's fees and costs.

### 1. *The Moores were damaged by Breck's negligence and made proper efforts to mitigate their damages*

 Breck argues that the no dwelling plat restriction is invalid as a matter of law and therefore the Moores have suffered no damage because of it.[7] In *Belland v. O.K. Lumber Co.*, 797 P.2d 638 (Alaska 1990), we held that a lender suffered no damage when the lender's attorney failed to discover a prior federal tax lien on the mortgaged property. Because a purchase money mortgage takes precedence over all prior liens, the lender was not harmed by the attorney's negligence. *Id.* at 641–42. The value of the loan was not diminished at all by the presence of the tax lien. In the present case, it is arguable that the no dwelling restriction is not enforceable against the Moores.[8] However, the restriction is not facially void. Thus, the cloud on the Moores' title is sufficient damage to maintain the action. The trial court correctly concluded that the Moores had alleged sufficient damage to state a cause of action for malpractice.

 In a related argument, Breck claims that the Moores failed to mitigate their damages by declining to pay him an additional fee to quiet title on the property. After the no dwelling restriction was discovered, Breck wrote to the Moores:

> I would estimate that the total cost of the Quiet Title Action would likely be in the $5,000 to $7,000 range. In view of my arguable exposure to a possible professional negligence claim ... I would be willing to undertake the Quiet Title Action on behalf of the Moores at one-half of my standard hourly rate (i.e. at $75.00 per hour instead of $150.00 per hour) for time expended, plus reimbursement for my out-of-pocket expenses and costs, should the Moores desire to consider this course.

The Moores did not in fact pursue this course. Instead the Moores settled with the Kralls and filed suit against Breck for the difference. The Moores acted reasonably. They had a duty to mitigate their damages and, while it might have been unreasonable

---

6. The Moores made a down payment of $30,000 and paid $5,517.65 in closing costs, of which $3,952.50 went to Breck for "document preparation." They do not claim mortgage payments or repair expenses while they were living in the duplex. From the time they moved out until settlement with the Kralls, they paid $100,254.79 in mortgage payments and $46,193.66 in repairs and other expenses, and received rents of $98,-186. Thus they incurred net out-of-pocket expenses related to the operation and rental of the duplex of $83,789.10. In addition, they claim entitlement to reimbursement for the award of attorney's fees and costs of $14,910.71 paid to Safeco.

7. The "no on-site water or sewage disposal construction without prior approval" restriction was unquestionably valid. When the Moores purchased the house they realized that it was served by a septic system. There was no evidence presented that the septic system was not approved by the health department when the house was constructed in 1972. Thus there is no evidence that this restriction resulted in any damage. The discussion which follows relates to possible damages resulting from the "no dwelling" plat restriction.

8. We need not address enforceability, as Breck sought no judicial declaration that the restriction was invalid.

for them to refuse to allow Breck to attempt to quiet title *at Breck's expense,* the Moores were under no obligation to pay an attorney to cure his initial error.

### 2. *Causation*

The lack of clear proof by the Moores understandably gave the trial court difficulty in determining whether Breck's negligence was a "substantial factor" in bringing about the Moores' losses, or whether the losses were "reasonably foreseeable." However, the trial court was able to determine that "Breck's negligence was a legal cause of the Moores' purchase of the duplex."

 The finding that the Moores had not met their burden of proving proximate cause on several damage allegations is a factual one. *Dura Corp. v. Harned,* 703 P.2d 396, 406 (Alaska 1985). Factual determinations are reviewed for clear error. Alaska R.Civ.P. 52. Clear error exists when this court is left with "a definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding." *Mathis v. Meyeres,* 574 P.2d 447, 449 (Alaska 1978). In making this determination, this court views the evidence in the light most favorable to the prevailing party. *Id.* Our review of the record shows no clear error in the trial court's determination on this point.

### 3. *Damages*

The next step is to determine the appropriate method of measuring the damages. A purchaser employs title agents to assure that she has adequate information about significant title restrictions before closing. The no dwelling restriction was shown to be a "deal stopper" at trial. However, the trial court found that the Moores "failed to carry their burden of proving the nature of their damages and their relation to defendant's negligence/breach of contract." Therefore, the

damage done to the Moores by entering into the contract could not be measured with any certainty. The court also found that the "Moores failed to introduce evidence ... regarding ... any connection between the plat restrictions at issue and the septic system problems." Therefore, the issue of whether an award of all out-of-pocket costs would be appropriate is not before this court, as we find no clear error on these factual determinations of the trial court. However, damages relating to the no dwelling restriction can be measured with sufficient certainty by using a different method.

 Although there is apparently no Alaska case discussing the measure of damages to be applied in a malpractice case involving restrictions on real property negligently overlooked, several cases provide close analogies. In *Advanced, Inc. v. Wilks,* 711 P.2d 524 (Alaska 1985), we noted that two theories of damages were possible in a damage to real property case: diminution in value and cost of cure.[9] *Advanced* at 527. In *Hancock v. Northcutt,* 808 P.2d 251 (Alaska 1991), we again noted these two alternate methods in a damage to property case. *Hancock* at 255. Also, in *City of Kenai v. Burnett,* 860 P.2d 1233 (Alaska 1993), an inverse condemnation case, we stated that the diminution in value measure was a proper one on which to instruct the jury, and noted that the cost of cure measure could be appropriate if the diminution test were shown to be inadequate. *Burnett* at 1241–42. The Restatement of Torts, in discussing harm to chattels, indicates that these two measures of damages are applicable in an appropriate case. Restatement (Second) of Torts § 928 (1979).

Cases from other jurisdictions with similar facts, although not involving attorney malpractice, generally hold that a diminution in value approach is the appropriate measure.[10]

---

9. "Diminution in value" awards damages based on the diminution of the property value as measured by the value of the property with and without the encumbrances. The "cost of cure" awards damages based on the cost of removing the defect.

10. *Overholtzer v. Northern Counties Title Ins. Co.,* 116 Cal.App.2d 113, 253 P.2d 116 (1953) (failing

to disclose easement on title policy, diminution applied); *Happy Canyon Inv. v. Title Ins. Co. of Minn.,* 560 P.2d 839 (Colo.App.1976) (undisclosed easement, diminution applied); *Sullivan v. Transamerica Title Ins. Co.,* 35 Colo.App. 312, 532 P.2d 356 (Colo.App.1975) (failed to list easement; applied diminution but noted cure approach); *U.S. Life Title Ins. Co. v. Hutsell,* 164

However, if the property owner can be made whole by curing the defect, and this cost is less than the diminished value, the cure approach should be used. Using a higher measure would result in unjust enrichment, for the property owner could spend part of the award curing the defect and retain the rest of the award. We note the guiding principal in these cases is making good the injury or loss. Using the lesser of the cost of cure or the diminution in value satisfies this criterion.

The Moores are entitled to receive at least the property as they expected to receive it. Therefore, the measure of damages is the lesser of (1) the cost of removing the no dwelling restriction, and (2) the diminution of the property value as measured by the value of the property with and without the restriction.[11]

We remand the determination of damages to the trial court for application of these criteria.

### D. The Trial Court Correctly Rejected Breck's Proposed Cost and Supersedeas Bond

The parties vigorously contest Breck's innovative cost and supersedeas bond strategies. Breck attempted to support his motion for a stay of execution of judgment with a supersedeas bond, listing himself as the principal and his professional corporation as the surety. The trial court rejected this bond, instead requiring "a surety completely independent of defendant Breck." Breck then attempted to "collateralize" the bond with a deed to Anchorage land, which he valued at the tax assessment rate. The trial court rejected the collateral and noted that the amount was $1,000 short. Breck sent a check for $1,000, which was apparently intended to make up the deficit in his supersedeas bond. The clerk treated the check as a cost bond submitted to avoid dismissal of Breck's appeal. The trial court has never approved a supersedeas bond and no stay of the judgment against Breck has been entered. We conclude that the trial court acted properly.[12]

Breck frequently makes the compound allegation that the trial court "erred (or abused its discretion), as a matter of law" on the supersedeas bond issues. The Moores interpret this to mean that Breck is asserting an abuse-of-discretion standard of review. They contend that this court should instead independently review the rejection of Breck's bonds. In fact, the two actions by the trial court are reviewed under two different standards of review.

The trial court's determination that an attorney's professional corporation may not act as surety for the attorney's personal appeal involves an interpretation of the Rules of Civil Procedure. We independently review this decision. *Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 n. 2 (Alaska 1991). The trial court correctly concluded that a professional corporation is not sufficiently independent from the professional to act as a surety. In addition, we note that under Civil Rule 80(b)(1), "[n]o attorney at law ... is qualified to be a surety." We see no principled distinction that would allow an attorney's professional corporation to act as a surety. An attorney should not be able to bootstrap his or her way around the surety requirement or Rule 80(b)(1).

---

Ga.App. 443, 296 S.E.2d 760 (1983) (defects in plat survey, applied diminution); *Lipinski v. Title Ins. Co.*, 202 Mont. 1, 655 P.2d 970 (1982) (undiscovered easement, cost of cure applied); *Hartman v. Shambaugh*, 96 N.M. 359, 630 P.2d 758 (1981) (undiscovered title defect, diminution applied); *Securities Serv., Inc. v. Transamerica Title*, 20 Wash.App. 664, 583 P.2d 1217 (1978) (ordinarily, when title clouded by lien or encumbrance, apply cost of removing it).

**11.** Diminution of value should be estimated as of the time of the transaction. Subsequent market factors are therefore irrelevant in estimating this diminution.

**12.** By their very nature, appeals of cost bond questions arise during appeal. We therefore do not require appellants to raise these issues in the points on appeal. *See* Alaska R.App.P. 210(e); *Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 797 (Alaska 1984) (noting generally rule and limited exceptions). In the present case, the points on appeal and the challenged supersedeas bond were filed on the same day. Appellants should raise supersedeas and cost bond issues in their opening brief.

Breck claims that this result unreasonably prevents corporations that carry the name of the appellant from acting as a surety. "[A] very substantial class of people (including the Fords, the Rothschilds, the Merrills, the Lynchs, the Deans, the Witters ...) [will] be discriminated against ... without precedent in the common law, logical necessity or social utility." At some point on the continuum from sole ownership of one's own professional corporation to the status of founder and shareholder in a large multinational corporation, there may be sufficient independence for the corporation to act as a surety for the individual. In this case, the trial court was correct as a matter of law. An attorney appellant may not use his or her professional corporation as a surety.

 The trial court rejected Breck's proffer of real property as collateral for the bond. We review the trial court's determination that a surety is inadequate for an abuse of discretion. Appellate Rule 204(d) provides that the supersedeas bond is subject to the approval of the court and "shall have such surety or sureties as the court requires." "Rule 204(d) allows the superior court discretion to set the security required for a stay." *City of Nome v. Catholic Bishop of N. Alaska*, 707 P.2d 870, 878 (Alaska 1985). The rules allow a cash substitute for a bond. Alaska R.Civ.P. 80(g). There is no comparable rule allowing the use of title to real property as a surety. While real or personal property may be adequate surety in some cases, the trial court did not abuse its discretion in this case.

## III. CONCLUSION

Summary judgment for Safeco and the award of costs and attorney's fees are AFFIRMED. The determination that Breck is liable to the Moores for professional malpractice is AFFIRMED. The award of damages is REVERSED and REMANDED for recalculation. The decision on attorney's fees and costs is VACATED. The court should reconsider attorney's fees and costs in light of the revised award of damages.

MOORE, C.J., concurs.

MOORE, Chief Justice, concurring.

I agree with the result in this case. I write separately because I disagree with two aspects of the majority opinion. First, the majority holds that the six-year statute of limitations for contracts, rather than the two-year statute for torts, applies to this case of professional malpractice. [Op. at 603–604] The majority relies upon *Lee Houston & Assocs. v. Racine*, 806 P.2d 848, 855 (Alaska 1991), which held that the six-year statute applies to professional malpractice actions claiming economic loss. I joined Justice Burke's dissent in *Lee Houston*, stating that the two-year statute should be applied because the defendant breached a general fiduciary duty to the client, that such duties are analogous to a general tortfeasor's duty of reasonable care, and that therefore the two-year statute of limitations for torts was more appropriate. *Id.* at 856–57 (Burke, J., dissenting); *see also* Scott L. Altes, *The Statute of Limitations for Professional Malpractice in Alaska after Lee Houston & Associates, Ltd. v. Racine*, 9 Alaska L.Rev. 41, 52–53 (1992) (agreeing that the tort statute of limitations is more appropriate in such circumstances).

In this case, the Moores sued their lawyer, Breck, for breach of contract and negligence for failing to warn of restrictions in the plat for the property purchased by the Moores. This cause of action is based more in tort—for negligence—than in contract law. Therefore, for the same reasoning outlined in the *Lee Houston* dissent and in Altes, *supra*, I would apply the two-year statute of limitations to this case.

My other objection to the majority opinion is its citation to *Bauman v. Day*, 892 P.2d 817 (Alaska 1995), in which I also dissent. I reaffirm my opposition to the overly broad discovery rule for contracts adopted in *Bauman*.

Nevertheless, I concur in the result reached today. As the majority correctly states, "[w]e have consistently held that the discovery rule applies to professional malpractice." [Op. at 603] The fact of negligent title research and the resulting harm are difficult for a lay person to discover. Furthermore, as previously discussed, this action

sounds more in tort than in contract.[1] I agree with the majority's application of the discovery rule to this case. The Moores did not actually discover Breck's failure to find the plat restrictions until 1989. Therefore, whether the two-year or six-year statute is applied, their suit against Breck was not time-barred.

1. I note that my positions regarding the proper statute of limitations, discovery rule, and measurement of damages are consistent—I would apply the appropriate rule for torts to this case. In contrast, the majority finds that the *tort* measure of damages applies, yet maintains that the *contract* statute of limitations applies. The tort/contract distinction would not affect the majority's discovery rule application, in light of *Bauman.*